# EXHIBIT 1

**Roman Martinez**
**1.202.637.3377**
**roman.martinez@lw.com**

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

March 2, 2023

Tracey St. Pierre
Chief FOIA Officer
FOIA Service Center, Office of Secretary of Education
400 Maryland Avenue, SW
Washington, DC 20202-4536

Re:     Freedom of Information Act Request

Dear Ms. St. Pierre:

Pursuant to the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*., Latham & Watkins LLP ("Latham") requests copies of the records described below.  For purposes of this request, Latham directs your attention to the regulatory guidance GEN-23-03, the March 2017 Third-Party Servicer Q&A, GEN-15-01, and GEN-12-08, attached as Exhibits A–D, respectively, of this request.  Latham is seeking this information on behalf of a client who may be impacted by the regulatory guidance.  If Latham's request is denied in whole or in part, please justify all denials by reference to specific exemptions under FOIA.  Please also release all segregable portions of otherwise exempt material.  Latham will pay all necessary fees. Specifically, this letter makes the following request for records:

1. In the 2023 Dear Colleague Letter ("DCL") GEN-23-03, attached as Exhibit A, the Department of Education ("Department") says that it "has reviewed numerous contractual arrangements between institutions and outside entities" and concluded "that most activities and functions performed by outside entities on behalf of an institution are intrinsically intertwined with the institution's administration of the Title IV programs and thus the entities performing such activities are appropriately subject to [third-party servicer] requirements."  Latham is seeking copies of all emails, letters, memoranda, or documents reflecting how the Department examined such contractual arrangements, analyzed the governing statutory and regulatory definitions of third-party servicers found in 20 U.S.C. § 1088(c) and 34 C.F.R. § 668.2, and arrived at its conclusion.

2. In the 2023 DCL GEN-23-03, attached as Exhibit A, the Department concluded that "[p]reparing and/or disseminating promotional materials to market educational programs" could lead an entity to be treated as a third-party servicer if the entity is also "involved in the design or delivery of educational programs."  However, in the March 2017 Third-Party Servicer Q&A, attached as Exhibit B, the Department broadly recognized that the

**LATHAM&WATKINS**LLP

performance of "a non-Title IV function, such as marketing the institution's academic programs, . . . does not make that entity or individual a third-party servicer." Latham is seeking copies of all emails, letters, memoranda, or documents reflecting why the Department concluded, contrary to prior guidance, that marketing services now could make a providing entity a third-party servicer.

3. In the 2023 DCL GEN-23-03, attached as Exhibit A, the Department concluded that "providing prospective students with information on educational programs, application and document requirements, deadlines, and the enrollment process" could lead an entity to be treated as a third-party servicer. Latham is seeking copies of all emails, letters, memoranda, or documents reflecting why the Department concluded that these activities now could make a providing entity a third-party servicer.

4. The 2023 DCL GEN-23-03, attached as Exhibit A, stated that it would "update and replace past guidance," namely, the March 2017 Third-Party Servicer Q&A, attached as Exhibit B, GEN-15-01, attached as Exhibit C, and GEN-12-08, attached as Exhibit D. Latham is seeking copies of all emails, letters, memoranda, or documents reflecting why the Department concluded that the guidance contained in Exhibits B–D needed to be rescinded.

5. In the 2023 DCL GEN-23-03, attached as Exhibit A, the Department invited "the community to submit comments on the guidance in this letter" for 30 days following its February 28, 2023, update. It also set an effective date for implementation of the guidance on September 1, 2023. Latham is seeking copies of all emails, letters, memoranda, or documents reflecting why the Department believed that a comment period was warranted and how the DCL's effective date was chosen.

6. All emails, letters, memoranda, or other documents related to the drafting of the 2023 DCL GEN-23-03, attached as Exhibit A.

I would appreciate communication by email or telephone, rather than by postal mail. Please feel free to contact me directly with any questions at 202.637.3377 or roman.martinez@lw.com. Thank you for your assistance.

Best regards,

Roman Martinez
of LATHAM & WATKINS LLP

# **EXHIBIT A**



*Published on https://fsapartners.ed.gov/knowledge-center/library/dear-colleague-letters/2023-02-15/requirements-and-responsibilities-third-party-servicers-and-institutions-updated-feb-28-2023*

PUBLICATION DATE: February 15, 2023
DCL ID: GEN-23-03
SUBJECT: Requirements and Responsibilities for Third-Party Servicers and Institutions (Updated Feb. 28, 2023)

SUMMARY: This letter updates guidance to institutions that contract with a third-party servicer (TPS) to administer any aspect of the institution's participation in the student assistance programs authorized under Title IV of the Higher Education Act of 1965, as amended (HEA).

>  **Note**
>
> On Feb. 28, 2023, we updated this letter to extend the public comment period, establish a future effective date for the guidance, and extend the reporting deadline for institutions and third-party servicers.
>
> On Feb. 16, 2023, we corrected the content of the table titled "Recruitment- and Application-Related Activities" to add information that was inadvertently omitted during the publication process.

Dear Colleague:

Since we issued our most recent Dear Colleague Letters regarding third-party servicers, the U.S. Department of Education (Department) has reviewed numerous contractual arrangements between institutions and outside entities. These reviews have confirmed that most activities and functions performed by outside entities on behalf of an institution are intrinsically intertwined with the institution's administration of the Title IV programs and thus the entities performing such activities are appropriately subject to TPS requirements. The HEA makes clear that agreements to administer "any aspect" of an institution's participation in the Title IV programs fall within the scope of the Department's TPS oversight authority. 20 U.S.C. § 1088(c). The information gathered in the Department's review highlighted the need for an updated list of functions and activities that fall within the scope of the TPS requirements.

In particular, the Department is revising its guidance concerning the functions of student recruiting and retention, the provision of software products and services involving Title IV administration activities, and the provision of educational content and instruction. The Department is aware that a large and growing industry has developed to provide one or more of these services as a means of transitioning academic programs into a distance education format and expanding enrollment. Companies providing such services are sometimes referred to as "online program managers," or OPMs. An April 2022 Government Accountability Office (GAO) report ⧉ defines OPMs as generally providing services that include "market research, marketing and student recruiting, enrollment management, student retention services, and technology-related support." The GAO report goes on to state that, based upon information it obtained from a market research firm, at least 550 institutions worked with an OPM as of July 2021 and that the market continues to grow. As described in Dear Colleague Letter GEN-22-07, the Department has separately become aware of non-compliance with limitations on the portion of an eligible academic program that can be provided by a third party.

Although the functions described above are subject to important statutory and regulatory limitations, such as the prohibition on incentive compensation for recruitment and limitations on the percentage of an academic program that can be provided by an ineligible institution or organization, the Department has not previously notified the community that the performance of these functions subjects an entity to TPS requirements. The Department's recent review of these functions, and the 2022 GAO report cited above, have made clear that the Department must conduct oversight of the entities performing these functions to ensure compliance with the TPS requirements. We therefore issue this guidance to clarify that entities performing the functions of student recruiting and retention, the provision of software products and services involving Title IV administration activities, and the provision of educational content and instruction are defined as third-party servicers. As such, the institutions that contract with these entities are subject to reporting requirements with respect to the entities, and the entities themselves are subject to annual non-federal audits of the Title IV-relevant functions they perform, if such functions are covered by the audit guide.

The Department wishes to ensure that eligible institutions and third-party servicers have a clear understanding of the requirements for third-party servicers and a reasonable amount of time to comply with those requirements. Therefore, the guidance in this Dear Colleague Letter will not become effective until September 1, 2023. Reporting requirements will also go into effect on that date.

On the effective date, the guidance in this letter will update and replace past guidance provided in Dear Colleague Letters GEN 12-08, GEN 15-01, and GEN 16-15 (as amended by our March 8, 2017 electronic announcement), and those documents will be rescinded.

## Third-Party Servicer Definition and Activities

A TPS is any entity or individual that administers, any aspect of an institution's participation in the Title IV programs. 34 C.F.R. § 668.2 🔗 (definition of a third-party servicer). In general, a TPS performs functions or services necessary —

- For the institution to remain eligible to participate in the Title IV programs;

- To determine a student's eligibility for Title IV funds;

- To provide Title IV-eligible educational programs;

- To account for Title IV funds;

- To deliver Title IV funds to students; or

- To perform any other aspect of the administration of the Title IV programs or comply with the statutory and regulatory requirements associated with those programs.

To protect the interests of institutions, taxpayers, and students, an institution may not contract with a TPS to perform any aspect of the institution's participation in a Title IV program if the servicer (or its subcontractors) is located outside of the United States or is owned or operated by an individual who is not a U.S. citizen or national or a lawful U.S. permanent resident. This prohibition applies to both foreign and domestic institutions.

Additionally, under the regulations at 34 C.F.R. 668.25(d) 🔗, a TPS may not have –

- Been limited, suspended, or terminated by the Secretary within the preceding five years;

- Had, during the servicer's two most recent audits, an audit finding that resulted in the servicer being required to repay an amount greater than five percent of the funds that the servicer administered under the Title IV programs for any award year; or

- Been cited during the preceding five years for failure to submit audit reports required under Title IV of the HEA in a timely fashion.

If the Secretary determines that a TPS has not met the required standards of conduct or has violated its fiduciary duty, the Secretary may fine the servicer or limit, suspend, or terminate the servicer's participation in the Title IV programs under 34 C.F.R. part 668, subpart G. A former TPS, once subjected to a termination action by the Secretary, may not enter into a written contract to administer any aspect of an institution's participation in the Title IV programs unless financial guarantees and acknowledgements of joint and several liability under 34 C.F.R. 668.25(d)(2) 🔗 are provided.

The following set of tables include a non-exhaustive list of functions and services that, if outsourced by an institution to a third party, would render that third party a TPS subject to the TPS requirements. The set of tables also list potential exceptions.

| Third-Party Servicer | Not a Third-Party Servicer |
| --- | --- |
| The activities, functions, services, or roles in this column **ARE** considered an aspect of an institution's participation in a Title IV program, whether performed from a remote location or on-site at an institution, and thus are subject to TPS requirements if performed on behalf of a Title IV-eligible institution.<br><br>The institution and TPS are jointly and severally liable to the Department for any violation by a TPS. | The activities, functions, services, or roles in this column **ARE NOT** considered an aspect of an institution's participation in a Title IV program and thus are not subject to TPS requirements if performed on behalf of a Title IV-eligible institution.<br><br>The institution is solely responsible for any Title IV liability incurred as a result of a non-TPS contractor violation. |

## Recruitment- and Application-Related Activities ⌄

| Third-Party Servicer | Not a Third-Party Servicer |
|---|---|
| Interacting with prospective students for the purposes of recruiting or securing enrollment. This includes, but is not limited to, providing prospective students with information on educational programs, application and document requirements, deadlines, and the enrollment process.<br><br>Assisting students with the completion of application and enrollment processes. This includes offering admission and enrollment counseling.<br><br>Processing admissions applications, including the collection of documents, screening, and/or determining initial or final qualification of applicants.<br><br>Establishing or modifying admissions standards for acceptance into the institution or any educational programs offered by the institution.<br><br>Processing Title IV student financial aid applications, including FAFSA or pre-FAFSA completion services.<br><br>Performing individualized and interactive financial aid counseling in person, over the telephone, and/or by electronic means, including operating call centers and online support/engagement tools to answer general questions and/or assist students through the financial aid processes necessary to award and disburse Title IV funds. Such processes include, but are not limited to, completing the FAFSA, conducting verification, identifying and resolving student eligibility issues, and providing general Title IV counseling. | Conducting, hosting, or assisting with community awareness/public service Free Application for Federal Student Aid (FAFSA®) completion events and/or general financial aid/college presentations open to the public and not limited or restricted to students attending, applying to, or considering applying to a specific institution or institutions (e.g., College Goal Sunday).<br><br>Publishing and/or mailing general student financial aid information, policies, procedures, or handbooks prepared by the institution or other entities via print format, audio format, video format, and/or online, as long as such publication does not involve individualized and interactive financial aid counseling. |

## Student and Institutional Eligibility ⌄

| Third-Party Servicer | Not a Third-Party Servicer |
|---|---|
|  |  |

| | |
|---|---|
| Determining student Title IV eligibility and related activities, such as completing verification, performing satisfactory academic progress evaluations, determining award amounts, performing Return of Title IV aid calculations, and/or reconciling Title IV program accounts.<br><br>Processing, awarding, certifying, originating, and/or approving Title IV awards or award packages and/or disbursements, including requests for funding under the advance, heightened cash monitoring, or reimbursement methods of payment.<br><br>Administering/proctoring ability-to-benefit tests or establishing or administering any aspect of an eligible career pathway program.<br><br>Preparing/submitting required applications or reports, such as an institution's Application for Approval to Participate in the Federal Student Financial Aid Programs (E-App), Fiscal Operations Report and Application to Participate (FISAP), Integrated Postsecondary Education Data System (IPEDS) reports, or Campus Safety and Security data reports, and/or reporting on behalf of an institution to the National Student Loan Data System (NSLDS). | Publishing ability-to-benefit tests. |

## Consumer Information ⌄

| Third-Party Servicer | Not a Third-Party Servicer |
|---|---|
| Preparing and/or obtaining data for required consumer information disclosures, such as:<br><br>- The Campus Security Report (including crime statistics, timely warnings and emergency notifications, crime logs, and emergency response and evacuation procedures)<br><br>- A biennial review of drug and alcohol abuse prevention programs<br><br>- Graduation and transfer rates<br><br>- Job placement rates and/or any related disclosures<br><br>- Title IV loan counseling<br><br>- A preferred lender list<br><br>Preparing and/or disseminating promotional materials to market educational programs if the entity or individual provides any technology, curriculum, or faculty, or is otherwise involved in the design or delivery of educational programs. | Conducting campus crime awareness and/or drug and alcohol prevention informational meetings, instructional programming, and/or public awareness campaigns/events that are open to the public and not limited to or restricted to attendance at a specific institution or institutions.<br><br>This exclusion does not apply if an institution requires attendance at an event or completion of training to comply with any Title IV requirement (e.g., requirements under the Campus Crime and Security Act or Violence Against Women Act, or Drug and Alcohol policy requirements).<br><br>Local or federal law enforcement agencies, fire departments, and/or other public safety agencies providing campus crime awareness and/or drug and alcohol prevention services.<br><br>Publishing and/or distributing an institution's consumer information disclosures or marketing materials online and/or via print, audio, or video formats if the individual or entity does not provide any technology, curriculum, or faculty, and is not involved in the design or delivery of educational programs.<br><br>Reviewing or validating graduation, transfer, placement rate, or other data on student outcomes, so long as the entity is not involved in the gathering or analysis of the data or the dissemination of the information. |

## Default Prevention ⌄

| Third-Party Servicer | Not a Third-Party Servicer |
|---|---|
| Performing default management/prevention/aversion activities, such as contacting student loan borrowers to discuss repayment options or borrower account history, assisting with completion and/or collection of borrower deferment, forbearance, or repayment plan enrollment forms, performing Title IV loan counseling (including required entrance or exit counseling), implementation and oversight of a written default management plan, and/or accessing borrower information contained in Departmental systems. | Preparing or presenting financial literacy curricula or programming, workshops, and/or public awareness campaigns/events, so long as they are open to participants regardless of whether they receive Title IV aid. This exclusion does not apply if an institution requires its students to attend a financial literacy event or complete financial literacy training or counseling to satisfy the institution's exit loan counseling or other Title IV requirements. |

## Delivery of Title IV Funds ⌄

| Third-Party Servicer | Not a Third-Party Servicer |
|---|---|
| Cash management functions including, but not limited to:<br><br>• Collecting student credit balance disbursement preferences.<br><br>• Providing terms and conditions and/or disclosure statements related to the disbursement options available to a student or parent.<br><br>• Collecting the financial account information necessary to initiate an Automated Clearing House (ACH) or electronic funds transfer (EFT) transaction of Title IV funds to a financial account designated by the student or parent for the receipt of those funds.<br><br>• Notifying students of the disbursement of Title IV funds and/or the delivery of Title IV credit balances.<br><br>• Receiving and processing electronic files (including files such as disbursement files, payment instructions, and fund wires) to print and mail Title IV credit balance checks and/or deliver Title IV credit balances to students or parents via ACH transactions, debit cards, or other means.<br><br>• Monitoring of undeliverable and/or unnegotiated checks or rejected ACH or EFT transactions involving Title IV funds. | Conducting activities under tier 2 arrangements as described in 34 C.F.R. § 668.164(f) <br><br>Initiating or authorizing direct Automated Clearing House (ACH) transactions between an institution's treasury account and an account designated by a student for receipt of Title IV funds.<br><br>Mailing checks issued by the institution. |

## Computer Services/Software and Record Maintenance ⌄

| Third-Party Servicer | Not a Third-Party Servicer |
|---|---|
| Collecting, reviewing, and/or maintaining the information and/or documentation necessary to make or support student eligibility determinations and/or to disburse Title IV funds to a student or borrower. This includes, but is not limited to, information necessary to validate information reported on a student's FAFSA and/or to resolve conflicting information, as well as information regarding student disbursement preferences for the delivery of Title IV credit balances. | Warehousing of records, if such activity involves only storage of records and the entity has no access to or control over the data.<br><br>The exclusion for the "warehousing of records" is restricted to the storage of Title IV-related records and **does not** apply if the entity performs any Title IV activity on behalf of the institution within the data storage or hosted environment. For these purposes Title IV activity includes, but is not limited to, remote or automated processing.<br><br>The exclusion **does not** apply if the entity has view or update access to any student-level information within the hosted environment and/or exercises control over the data. |
| Providing computer services or software in which the provider has access to, or maintains control over, the systems needed to administer any aspect of the Title IV programs, whether through manual or automated processing, including, but not limited to, systems related to financial aid management, recruitment and enrollment, admissions, registration, billing, and learning management. | Providing computer services or software where the provider has no access to and maintains no control over the systems needed to administer any aspect of the Title IV programs.<br><br>This exclusion is limited to computer products and/or services that reside at and are under the control of the institution and **does not** apply if the provider performs any activity on behalf of the institution within a system through remote or automated processing, or if the provider uses or has view or update access to any student-level information in any system used for the administration of any aspect of the Title IV programs. |

## Retention of Students ⌄

| Third-Party Servicer | Not a Third-Party Servicer |
|---|---|
| Conducting activities designed to keep an individual enrolled at an institution eligible for Title IV aid. These activities include, but are not limited to:<br><br>• Monitoring academic engagement and/or daily attendance.<br><br>• Conducting outreach to students regarding attendance or academic engagement.<br><br>• Responding to inquiries from students and/or their families regarding assistance or resources designed to help students maintain enrollment in the institution/program or maintain eligibility for Title IV aid. | |

## Instructional Content ⌄

| Third-Party Servicer | Not a Third-Party Servicer |
|---|---|
| Providing any percentage of a Title IV-eligible program at an institution, including:<br><br>- Establishing requirements for the completion of a course and/or evaluating whether a student has met those requirements;<br>- Delivering instruction or mandatory tutoring;<br>- Assessing student learning, including through electronic means; or<br>- Developing curricula or course materials, unless the institution maintains full control of the curriculum/materials and delivers the instruction itself. See previous Dear Colleague Letter.  | Providing optional supplementary academic support to students, such as tutoring or other forms of optional academic assistance. This exclusion **does not** apply if the academic assistance is mandatory or a required part of the academic program.<br><br>Selling or providing course materials, if the institution maintains full control of the curriculum and delivers the instruction itself. This exclusion **does not** apply if the vendor maintains control of the program or materials after selling the materials to the institution or is in any way involved with instruction. |

## Consulting and Auditing ⌄

| Third-Party Servicer | Not a Third-Party Servicer |
|---|---|
| Consulting on any topics related to financial aid, including financial aid staffing, interim management, processing support, and/or the development and maintenance of written policies and procedures.<br><br>Audit activities, if the individual or entity also performs any other activities related to the institution's administration of the Title IV programs. | Consulting activities meeting **all** of the following criteria:<br><br>- The services provided are strictly advisory in nature;<br>- The institution employs a separate individual as a financial aid administrator with responsibility for Title IV program activities;<br>- The consulting entity does not perform any Title IV activities; and<br>- All decision-making and activities related to Title IV administration are carried out by institutional staff not affiliated with the consulting entity.<br><br>This exclusion does not apply unless **all** the criteria above are met. <br><br>The performance of only financial and compliance auditing, including the preparation of financial statements and required schedules (such as, Schedule of Expenditures of Federal Awards or the Financial Responsibility Supplemental Schedule), does not create a TPS relationship with the institution. |

## Federal Perkins Loan Program ⌄

| Third-Party Servicer | Not a Third-Party Servicer |
|---|---|
| | |

| Conducting any activities related to Federal Perkins Loan servicing or collection. | |

In determining whether an entity or individual is subject to the TPS requirements, the Department focuses on the specific services or functions performed by the entity/individual for the institution, as opposed to the entity's title or a generic description of the types of services provided or functions performed. The Department has observed that providers often offer multiple versions of a product or service and frequently customize a product or service based on an institution's unique needs. It is possible for an entity to be considered a TPS in relation to one institution and not for another, depending on the specific services or functions that the entity performs for each institution.

An institution must report any individual or entity with which it contracts that meets the TPS criteria listed above using the Department's E-App process. The information must be reported within 10 calendar days of entering a contract (or any other written or oral agreement) with the third party. This reporting requirement also applies whenever there is any substantial modification to an existing contract or agreement or the termination of a contract or agreement. 34 C.F.R. § 668.25(e) . If the institution is unsure of whether an individual or entity is subject to the TPS requirements, or any entity or individual directs the institution not to report the entity as a TPS, the institution should contact its School Participation Division at CaseTeams@ed.gov.

Regardless of whether an entity is considered a TPS for Title IV purposes, the institution has a fiduciary responsibility to ensure that any contracts, policies, procedures, products, or systems used by the institution or its contractors/providers are compliant with applicable laws and regulations. This includes the requirements in 34 C.F.R. § 668.24(f)  that an institution be able to access all records (paper or electronic) created or maintained by a third party and to make those records readily available to the Department for review. If the provider or the institution terminates a contract, or the provider ceases to provide the product or service for any reason, including client non-payment, the institution must be able to take possession of all records in the provider's possession pertaining to the institution's participation in the Title IV programs and reclaim all Title IV funds held by the provider.

Institutions must also implement appropriate safeguards to protect student records and ensure any information shared from education records is only used for the purposes for which the information was disclosed. The institution will be held responsible for any liability incurred as a result of software deficiencies, data breaches, incorrect consulting advice, lost or damaged records, and/or violations of TPS requirements.

## Questions and Answers Related to this Dear Colleague Letter

### *Third-Party Servicer General Questions (GEN)*

### GEN-Q1: If an institution does not compensate or reimburse an entity or individual for the Title IV functions or services that are performed on behalf of the institution, is the entity or individual still considered a TPS?  ⌄

Yes. A TPS is an entity or individual that administers any aspect of an institution's participation in the Title IV programs, regardless of remuneration.

### GEN-Q2: If a state agency performs Title IV functions or services on behalf of an eligible institution, is the state agency considered a TPS?  ⌄

Yes. If a state agency performs Title IV functions or services on behalf of an eligible institution, the state agency is considered a TPS and subject to the applicable TPS regulations.

### GEN-Q3: Does the Department approve or recommend a TPS to perform Title IV functions for an institution?  ⌄

No. While the Department has oversight authority over a TPS performing Title IV functions for an institution, the Department **does not** list, endorse, or approve any TPS.

**GEN-Q4: Is a TPS subject to the ban on incentive compensation?** ⌄

Yes. A TPS is subject to the same incentive compensation prohibitions as an institution. Neither persons nor entities may receive direct or indirect incentive compensation for recruiting or securing the enrollment of students, or for securing financial aid for students. See 34 C.F.R. § 668.14(b)(22). ⧉

**GEN-Q5: Is a TPS subject to the requirements in 34 C.F.R. part 601, subpart B?** ⌄

Yes. A TPS, as an entity acting on behalf of a covered institution, is subject to the loan information disclosure requirements of 34 C.F.R. part 601, subpart B, including the preferred lender disclosure requirements, private education loan disclosure requirements, the prohibition on agreeing to the use of an institution's name, and complying with the preferred lender arrangement code of conduct. See 34 C.F.R. § 601.10 ⧉, 601.11 ⧉, 601.12 ⧉, 601.21 .

**GEN-Q6: If an institution hires an individual from a temporary staffing agency to perform Title IV functions, is the staffing agency considered a TPS?** ⌄

It depends upon the nature of the staffing agency and the functions it performs. A temporary staffing agency that does not specialize in, or have a significant presence in, the higher education sector or the administration of Title IV programs is not considered a TPS. As a result, the institution is solely responsible for any liabilities that may result from errors or compliance violations caused by the temporary staff provided by this type of agency. Any attempt by an agency or institution that contracts with it to misrepresent the extent of that agency's involvement in the higher education sector or administration of Title IV programs, is considered a program violation.

An entity that specializes in, or has a significant presence in, the higher education sector and/or the administration of Title IV programs, and that provides staffing, even on a temporary basis, to support an institution's administration of the Title IV programs is considered a TPS. Both the institution and the TPS are subject to all applicable TPS-related requirements. The institution and the third-party servicer are jointly and severally liable to the Department for any errors or compliance violations made by the staff provided by the TPS.

**GEN-Q7: If an institution contracts with an outside entity to print and/or mail Title IV credit balance checks or to prepare electronic transfers of Title IV credit balances, is the entity considered a TPS?** ⌄

It depends on the degree to which the outside entity controls or has access to institutional funds. If an institution contracts with an entity to print and/or mail Title IV credit balance checks or to prepare electronic transfers of Title IV credit balances and those checks or electronic transfers draw funds directly from the institution's treasury account (the institution's operating account) or federal funds bank account (an account utilized to receive Title IV funds directly from the Department via G5), the check preparation or EFT entity is not considered a TPS. In these arrangements, the institution is responsible for reconciling its accounts, monitoring undeliverable or un-negotiated checks, and returning funds to the Department within the required regulatory time frames. The institution is solely responsible for any liabilities that may exist as a result of errors or compliance violations that may occur as a result of using the provider to perform these Title IV credit balance tasks.

If, on the other hand, an institution establishes an account at the third-party entity or transfers funds to an account with the third-party entity, or to any of the entity's affiliated partners, for purposes of writing Title IV credit balance checks out of such an account or creating EFT transactions out of such account, the third-party entity is considered to be a TPS and both the institution and the TPS are subject to all applicable TPS-related requirements. The institution and the TPS are jointly and severally liable to the Department for any errors or compliance violations made by the TPS.

## GEN-Q8: If an institution performs Title IV functions or services on behalf of another institution (e.g., verification of student files; COD reporting; drawdown of funds; or reconciliation of Title IV programs), is the institution performing the functions considered a TPS? 

It depends. If an eligible institution performs Title IV functions or services on behalf of another institution that has the same legal corporate or shared governance system (e.g., a public institution performing functions on behalf of another institution within the same legally established state educational system or a proprietary institution performing functions on behalf of another institution within the same corporate ownership) the institution performing the functions would **not** be considered a TPS.

If an eligible institution performs Title IV functions or services on behalf of another institution that is **not** part of the same legal corporate or shared governance system, the institution performing the functions **is** considered a TPS and is subject to the applicable TPS regulations.

## GEN-Q9: If an institution contracts with an outside entity to perform functions necessary for the institution to calculate and/or disclose an institution's job placement rate or other student outcome measure, is the outside entity considered a TPS? 

It depends. If an entity or individual is performing the functions necessary to calculate an institution's placement rates or other outcome metrics, and the institution uses or relies on this information to prepare required disclosures, the entity or individual is considered a TPS. Such functions include, but are not limited to:

- Contacting former students or their employers;

- Obtaining information or documentation from a former student, their employer, or other resources to confirm such employment; or

- Preparing required disclosures.

If an entity or individual is only reviewing institutional information, that review will not by itself result in the entity or individual being considered a TPS. However, if the activities of the entity or individual include gathering data, analysis of data, or reaching out to data providers, the entity or individual is considered a TPS.

## GEN-Q10: Does the Department consider an individual's affiliation or source of employment when determining whether the Title IV-related functions performed by that individual are considered to be performed by a TPS? 

Yes. TPS requirements apply when an individual who owns, is employed by, or is associated with an outside entity, including an independent contractor, performs Title IV-related functions or services on behalf of an eligible institution. TPS requirements also apply when an individual designated as an independent contractor performs Title IV-related functions or services on behalf of the institution.

An employee of an institution is not considered a TPS if the employee —

- Is paid directly by the institution and funds for the individual's employment have not been provided indirectly by another entity;

- Performs all duties under the institution's supervision;

- Is not employed by or associated with a TPS;

- Does not perform functions or services on behalf of another institution; and

- Is not a TPS for any other institution.

***Third-Party Servicer Contracts (CNT)***

## CNT-Q1: Is an institution that receives a product or service from a TPS required to enter into a written contract with the TPS? ⌄

Yes. An institution must enter into a contract with a TPS that clearly and thoroughly describes the services and functions the servicer is responsible for providing or performing on behalf of the institution.

## CNT-Q2: What is the institution required to tell the Department when it enters into a contract with a TPS? ⌄

The institution's notification must include the name and address of the servicer as well as a description of the functions or services that the servicer is performing on behalf of the institution. An institution reports TPS notifications via the Application for Approval to Participate in the Federal Student Financial Aid Programs (E-App) website  or its successor website.

Upon request, the institution must provide a copy of its TPS contract (and any modifications) to the Department.

## CNT-Q3: What must be included in a TPS contract? ⌄

In a TPS contract, the servicer must agree to:

- Be jointly and severally liable with the institution for any violation of Title IV requirements resulting from the functions performed by the servicer;

- Comply with all applicable statutory, regulatory, and other Title IV requirements, including submission of TPS compliance audits;

- Refer any suspicion of fraudulent or criminal conduct regarding administration of the institution's Title IV programs to the Department's Office of Inspector General;

- Confirm student eligibility and return Title IV funds (if required) when a student withdraws from the institution if the servicer disburses Title IV funds; and

- Return all records related to the servicer's administration of the institution's participation in the Title IV programs to the institution, and if the servicer disburses or releases Title IV funds, return all unexpended Title IV funds to the institution, if the contract with the institution is terminated, or the servicer ceases to perform any functions prescribed under the contract for any reason including non-payment of financial obligations by the institution.

An institution must ensure that its contracts accurately and specifically detail the functions that the servicer and its subcontractor(s), if applicable, will perform on behalf of the institution, as well as the functions that will or must be completed by the institution. The contract must identify the TPS by its legal name and include any other name under which the servicer does business (d/b/a). The contract must provide the physical address and primary telephone number of the servicer's primary location, as well as the name, title, telephone number, and email address of the president or chief executive officer of the entity. If a TPS subcontracts any of its contractual responsibilities, the contract must identify each subcontractor and clearly describe the functions performed on behalf of the servicer and institution by the subcontractor.

In addition, institutions are subject to the information security requirements for financial institutions established by the Federal Trade Commission (FTC) under the Gramm-Leach-Bliley Act. More information can be found on the FTC's website . Institutions must take reasonable steps to select and retain service providers that are capable of maintaining appropriate safeguards for customer information and require service providers **by contract** to implement and maintain such safeguards.

Finally, the institution must require the TPS to agree to comply with all aspects of the Family Educational Rights and Privacy Act (FERPA) with regard to the receipt and use of any education records provided by the institution.

Institutions are strongly encouraged to include provisions in any TPS contract to terminate the contract immediately, without penalty, if the institution is notified that the Department has imposed an emergency, limitation, suspension, or termination action with regard to a servicer's ability to contract with the institution to administer any aspect of its

participation in the Title IV programs. Institutions are also strongly encouraged to include similar language to terminate a contract if the servicer is debarred, suspended, or voluntarily excluded from government-wide participation in covered transactions.

### CNT-Q4: Are there any restrictions or prohibitions that prevent an institution from contracting with an individual or entity to perform Title IV functions on its behalf?

Yes. An institution may not contract with or otherwise engage a TPS that:

- Has been limited, suspended, or terminated by the Department within the preceding five years;

- Has been convicted of, or pled nolo contendere or guilty to, a crime involving the acquisition, use, or expenditure of federal, state or local government funds;

- Has been administratively or judicially determined to have committed fraud or any other material violation of law involving federal, state, or local government funds;

- Has had, during the servicer's two most recent audits, a finding that resulted in the servicer being required to repay an amount greater than five percent of the funds that the servicer administered under the Title IV programs for any year; or

- Has been cited during the preceding five years for failure to submit audit reports required under Title IV in a timely fashion.

In addition, an institution may not contract with a TPS to perform any aspect of the institution's participation in a Title IV program if the servicer is located outside of the United States or is owned or operated by an individual that is not a U.S. citizen or national, or a lawful U.S. permanent resident.

### CNT-Q5: How can an institution determine if a TPS or its principals have been debarred, suspended, or voluntarily excluded government-wide from participation in covered transactions?

An institution must search the General Services Administration's System for Award Management site at http://www.sam.gov  when it enters into, renews, or revises a contract with a servicer to determine if the servicer is an excluded entity. The institution should keep a copy of the search results in its records.

### CNT-Q6: How can an institution determine if the Department has imposed an emergency limitation, suspension, or termination action with regard to a servicer's ability to contract with the institution to administer any aspect of its participation in the Title IV programs, pursuant to the provisions of 34 C.F.R. part 668, subpart G?

The Department will notify an institution in writing if the institution reports contracting with a servicer that has been limited, suspended, or terminated by the Department, or if the Department has imposed an emergency action on the servicer.

### CNT-Q7: Must an institution require a TPS to sign a Certification By Lower Tier Contractor form?

Yes, an institution is required to obtain a signed Certification By Lower Tier Contractor form from each contracted TPS, as well as each subcontractor that performs work for the institution on behalf of a TPS. A Lower Tier Contractor includes any contracted individual who participates in the institution's administration of the Title IV programs and is not

considered an employee of the institution. The Certification By Lower Tier Contractor form is included as an attachment to the institution's PPA. The institution must make copies of the form and obtain the signatures of any and all Lower Tier Contractors on those copies. The signed certification(s) must be retained in the institution's files.

### CNT-Q8: What does jointly and severally liable mean? ⌄

Under joint and severable liability, the Department may seek repayment for Title IV violations from the institution, the TPS, or both.

Since the institution is jointly and severally liable for any violation committed by its TPS, the institution should take precautions during its selection and contracting process and implement procedures with appropriate controls, including periodic assessments, to ensure that the functions or services performed by the TPS on behalf of the institution are performed in compliance with Title IV rules.

*Third-Party Servicers – Safeguarding Student Information (SSI)*

### SSI-Q1: Does FERPA permit an institution to share personally identifiable information (PII) from a student's education records with a TPS without the student's consent? ⌄

Yes, under certain conditions. FERPA regulations at [34 C.F.R. § 99.31(a)(4)](#)  permit an institution to disclose PII from an education record of a student to a TPS, without consent, in connection with financial aid for which the student has applied or which the student has received, if disclosure of the information is necessary to:

    a. Determine eligibility for the aid;

    b. Determine the amount of the aid;

    c. Determine the conditions for the aid; or

    d. Enforce the terms and conditions of the aid.

The institution must comply with FERPA's recordkeeping requirements regarding disclosures in [34 C.F.R. § 99.32](#) , which require an education agency or institution to: (1) maintain a record of each request for access to and each disclosure of PII from the education records of each student; and (2) maintain the request record with the student's education records as long as the student's records are maintained. The request record must include: (1) the parties who requested or received PII from the education records, and (2) the parties' legitimate interests in requesting or obtaining the information. If the institution discloses PII from education records with the understanding that further disclosures will be made, the educational institution's disclosure record must include the names and legitimate interests of any additional parties.

### SSI-Q2: Are there any limitations or restrictions on the type of PII from education records that an institution can provide to its TPS without a student's prior written consent? ⌄

Yes. The PII from education records provided to a TPS is limited to only the information necessary for the TPS to perform its contracted Title IV function(s) or service(s) on behalf of the institution.

The institution must ensure that each TPS uses PII only for the purpose(s) for which the PII was disclosed. For a TPS, that purpose is the Title IV function the servicer contracted to perform on behalf of the institution. Servicers are **prohibited** from using PII for any other purpose.

The Department will initiate an administrative action against the institution and/or its TPS if a servicer violates this prohibition.

### SSI-Q3: Are there any limitations or restrictions on granting a TPS access to the Department's systems? 

Yes. For both the institution and any TPS, access to information in the Department's systems may only be used for the specific Title IV function or service that is being performed. The data contained in the Department's systems, such as the National Student Loan Data System (NSLDS), the Common Origination and Disbursement (COD) System, or the Central Processing System (CPS), are confidential and protected by the Privacy Act of 1974, as amended, and other applicable statutes and regulations.

Failure to comply with the Department's access and user requirements may result in the organization or individual losing access to the Department's systems and/or being subject to sanctions including, but not limited to, the initiation of a limitation, suspension, or termination action or a debarment proceeding against the individual, institution, and/or TPS. Each user of a Department system must use his or her own User-ID. That person is responsible for safeguarding the User-ID and password and must not allow use by any other person. Further, sharing or providing data retrieved by an authorized person from the Department's systems with persons or organizations that are not expressly authorized to receive that information is prohibited.

An eligible institution or TPS that allows unauthorized access to the Department's systems will be considered to have violated its responsibilities and places itself at risk of losing access to the Department's systems and data, and of possible loss of eligibility to participate in the Title IV programs.

### SSI-Q4: Is a TPS subject to information security requirements?

Yes. Postsecondary educational institutions participating in the Title IV programs are subject to the information security requirements established by the Federal Trade Commission (FTC) for financial institutions. These FTC requirements also apply to Title IV third-party servicers. The requirements apply to all customer information in an institution's possession, regardless of whether such information pertains to students, parents, or other individuals with whom the institution has a customer relationship, or pertains to the customers of other financial institutions that have provided such information to the institution. Customer information is any record containing nonpublic personal information about a customer of a financial institution, whether in paper, electronic, or other form, that is handled or maintained by or on behalf of the institution or its affiliates. As a financial institution covered under these information security requirements, an institution must develop, implement, and maintain a comprehensive information security program.

The information security program must be written in one or more readily accessible parts and contain administrative, technical, and physical safeguards that are appropriate to the size and complexity of the school, the nature and scope of its activities, and the sensitivity of any customer information at issue. Under these provisions, a service provider is any person or entity that receives, maintains, processes, or otherwise is permitted access to customer information through its provision of services directly with an institution. The institution must take reasonable steps to select and retain service providers that are capable of maintaining appropriate safeguards for the customer information at issue and require service providers by contract to implement and maintain such safeguards. Schools must periodically assess their third-party servicers to determine the risk they present and the continued adequacy of their safeguards.

*Third-Party Servicer Data Form (DF)*

### DF-Q1: What is a Third-Party Servicer Data Form and who is required to complete the form?

The Third-Party Servicer Data Form is an OMB-approved data collection tool used to validate TPS information that institutions report to the Department and to collect from each TPS additional information needed for effective oversight.

Entities or individuals that meet the definition of a TPS are required to submit the Third-Party Servicer Data Form to the Department and are required to update information provided on the Third-Party Servicer Data Form within 10 days of the date that:

- The servicer changes its name;

- The servicer changes the address or contact information for its primary location or additional location;

- The servicer adds or terminates a contract with an eligible Title IV institution;

- The servicer buys, sells, or merges with another TPS; or

- The servicer goes out of business.

## DF-Q2: Where can a TPS obtain a copy of the Third-Party Servicer Data Form and how is the form submitted to the Department?

The Third-Party Servicer Data Form is attached to this Dear Colleague Letter. Completed forms should be submitted electronically to:

fsapc3rdpartyserviceroversight@ed.gov

or mailed to:

Third-Party Servicer Oversight Group – Data Form
Federal Student Aid
United States Department of Education
1010 Walnut Street Suite 336
Kansas City, MO 64106-2147

## DF-Q3: How does a TPS report a service or function that is not listed in Question 16 of the TPS Data Form?

To report a service or function that is not listed in Question 16 of the TPS Data Form, the TPS should select "Other" and provide a written description of the services or functions performed.

### Third-Party Servicer Audits (ADT)

## ADT-Q1: Is a TPS required to submit an annual compliance audit?

Yes. A TPS that performs any aspect of an institution's administration of the Title IV programs must have an independent auditor conduct a compliance audit of its administration of the functions or services that it performs on behalf of eligible institutions, unless the servicer contracts with only one participating institution and the attestation engagement of that institution's participation involves every aspect of the servicer's administration of the Title IV programs. A TPS must follow the procedures contained in the audit guides  developed by, and available from, the Department of Education's Office of Inspector General (OIG), provided that the federal student aid functions performed by the entity are covered in the submission.

TPS audits must be submitted annually through eZ-Audit (https://ezaudit.ed.gov ) or its successor website. Contact the eZ-Audit Support Team by email at fsaezaudit@ed.gov for assistance with the eZ-Audit registration or submission process.

In cases where any Title IV services or functions performed by a TPS are not covered in the OIG's audit guide, the TPS must upload a letter as an attachment to its eZ-Audit annual submission that describes the services or functions performed by the entity. The letter must include an assurance from TPS management that the entity complied with all applicable requirements regarding the services and functions that it performed on behalf of eligible institutions.

In addition, the letter must include the following:

1. The following information regarding the servicer:
    Legal name and d/b/a name
    Address
    Telephone number
    Fax number
    Website URL

President/CEO name
Telephone number
Email address

Other contact person, title
Telephone number
Email address

2. A detailed description of the functions and services the servicer performs on behalf of the institution(s) with which it contracts. For example:

   o Provide prospective students with information on educational programs, application and document requirements, deadlines, and enrollment steps; or

   o Perform default management/aversion activities such as obtaining student borrower information contained in the Department's systems, contacting borrowers regarding loan indebtedness, repayment options or loan obligations, assisting with completion and collection of deferments, forbearances, and other loan documents.

3. A list of the Title IV institutions the servicer performed TPS work on behalf of during the servicer's most recently ended fiscal year. This list must include each institution's name and 8-digit OPE ID.

4. Assurances that:

   a. The servicer's contract includes all items in 34 C.F.R. § 668.25(c) .

   b. The servicer has established a system of internal controls to ensure compliance with the laws and regulations applicable to the services or functions that it provides.

   c. The servicer maintains comprehensive written procedures describing the functions or services it performs on behalf of institutions. These procedures must clearly outline the servicer's responsibilities and the institutions' responsibilities.

   d. The servicer complies with all requirements of the Family Educational Rights and Privacy Act (FERPA), as well as the information security requirements. established by the Federal Trade Commission (FTC) for maintaining appropriate safeguards with respect to the education records and student information to which it has access.

   e. The servicer adheres to all Department requirements for accessing and/or granting access to the Department's systems.

Audit supplement letters must be submitted to eZ-Audit (https://ezaudit.ed.gov ). Please refer to the July 17, 2020 Electronic Announcement for further instructions.

## ADT-Q2: What is the deadline for a TPS to submit its annual compliance audit?  ⌄

A TPS must submit its compliance audit or audit letter annually no later than six months after the last day of the servicer's fiscal year.

## ADT-Q3: Who should a servicer or auditor contact if it has questions regarding institution or servicer audit requirements?  ⌄

Audit questions should be submitted to the Department of Education's Office of the Inspector General's (OIG's) Non-Federal Audit Team by email at oignon-federalaudit@ed.gov.

# Contact Information and Implementation

If you have further questions about the TPS requirements discussed in this letter, please use the Contact Customer Support form in FSA's Partner Connect Help Center. To submit a question, enter your name, email address, topic, and question. When submitting a question related to this Dear Colleague Letter, please select the topic "FSA Ask-A-FED/Policy."

An earlier version of this letter invited the community to submit comments on the guidance in this letter so that we would have an opportunity to hear from the field about areas that are unclear or could be improved. We recognize that this has created some uncertainty around exactly what requirements and reporting deadlines will apply. Therefore, as noted above, we are

adjusting the effective date of the guidance to September 1, 2023. Institutions will be required to report any arrangements with third-party servicers that have not been reported to the Department, and entities meeting the definition of a third-party servicer will be required to submit the Third-Party Servicer Data Form to the Department by that date. Additionally, because we are announcing these changes during a comment period, we have elected to adjust the comment period so that it closes 30 days from the date of this update.

The community is invited to submit comments regarding the guidance presented in this Dear Colleague Letter within 30 days of this update to this letter via the Federal eRulemaking Portal at Regulations.gov ↗, under Docket ID ED-2022-OPE-0103. Information on using Regulations.gov, including instructions for finding a rule on the site and submitting comments, is available on the site under "FAQ." We are especially interested in comments on the impact of continuing the existing limitation on institutions contracting with third-party servicers operating outside the United States or owned or operated by individuals who are not U.S. citizens, nationals, or permanent residents, including how to address the Department's concerns about the ability to hold such servicers liable if necessary.

Thank you for your continued support of the Title IV programs.

Sincerely,

Annmarie Weisman
Deputy Assistant Secretary for Policy, Planning, and Innovation
Office of Postsecondary Education

## Attachments

*The Department of Education strives to make all content accessible to everyone. While this document does not currently meet the standards of Section 508 of the Rehabilitation Act of 1973, as amended, Federal Student Aid is working to create an accessible version. If you need access to this document before the accessible version is available, please contact the Information Technology Accessibility Program Help Desk at ITAPSupport@ed.gov✉ to help facilitate.*

Third-Party Servicer Data Form in PDF Format, 8 Pages, 471KB

# **EXHIBIT B**

Third-Party Servicer Q&A – Updated as of March 8, 2017

## CATEGORY: THIRD-PARTY SERVICER DEFINITION & EXAMPLES

**D&E-Q1:  What is a third-party servicer?**

**D&E-Q2:  What are some examples of functions or services performed by third-party servicers?**

**D&E-Q3:  How does the Department determine whether or not an entity or individual that is performing work on behalf of an institution is a third-party servicer?**

**D&E-Q4:  If an institution does not compensate or reimburse an entity or individual for the Title IV functions or services that are performed on behalf of the institution, is the entity or individual still considered a third-party servicer?**

**D&E-Q5:  If a State agency performs Title IV functions or services on behalf of an eligible institution, is the State agency considered a third-party servicer?**

**D&E-Q6:  Does the Department approve third-party servicers or recommend third-party servicers to perform Title IV functions on behalf of institutions?**

**D&E-Q7:  Are there any functions or services performed by a third-party servicer that would be subject to the ban on incentive compensation?**

**D&E-Q8:  If an institution hires an individual from a temporary staffing agency to perform Title IV functions, is the staffing agency considered a third-party servicer?**

**D&E-Q9: If an institution contracts with an outside entity to print and/or mail Title IV credit balance checks or to prepare electronic funds transactions (EFT) of Title IV credit balances, is the entity considered to be a third-party servicer?**

**D&E-Q10:** If an institution contracts with an outside entity to perform functions necessary for the institution to calculate and/or disclose an institution's job placement rate, is the outside entity considered a third-party servicer?

**D&E-Q11:** If an institution performs Title IV functions or services on behalf of another institution (i.e. performs verification of student files; COD reporting; drawdown of funds; reconciliation of Title IV programs), is the institution considered a third-party servicer?

### CATEGORY:  THIRD-PARTY SERVICER CONTRACTS

**CNT-Q1:**  Is an institution required to enter into a written contract with a third-party servicer?

**CNT-Q2:**  Are institutions required to notify the Department when it enters into a contract with a third-party servicer?

**CNT-Q3:**  What must be included in a third-party servicer contract?

**CNT-Q4:**  Are there any restrictions or prohibitions that prevent an institution from contracting with an individual or entity to perform Title IV functions on its behalf?

**CNT-Q5:**  How can an institution determine if a third-party servicer or its principals have been debarred, suspended, or voluntarily excluded government-wide from participation in covered transactions?

**CNT-Q6:**  How can an institution determine if the Department has imposed an emergency, limitation, suspension, or termination action with regard to a servicer's ability to contract with the institution to administer any aspect of its participation in the Title IV, HEA programs, pursuant to the provisions of 34 CFR Part 668, Subpart G?

**CNT-Q7:  Under what circumstances must an institution require a third-party servicer to sign a Certification By Lower Tier Contractor form?**

**CNT-Q8:  What does jointly and severally liable mean?**

CATEGORY:  THIRD-PARTY SERVICERS – SAFEGUARDING STUDENT INFORMATION

**SSI-Q1:  Does FERPA permit an institution to share personally identifiable information (PII) from students' education records with a third-party servicer without the student's consent?**

**SSI-Q2:  Are there any limitations or restrictions on the type of information that an institution can provide, without a student's prior written consent, to its third-party servicer?**

**SSI-Q3:  Are there any limitations or restrictions on granting a third-party servicer access to Department systems?**

CATEGORY:  THIRD-PARTY SERVICER DATA FORM

**DF-Q1:  What is a Third-Party Servicer Data form and who is required to complete the form?**

**DF-Q2:  Where can a third-party servicer obtain a copy of the Third-party Servicer Data Form and how is the form submitted to the Department?**

CATEGORY:  THIRD-PARTY SERVICER AUDITS

**ADT-Q1:  Are third-party servicers required to submit an annual compliance audit?**

**ADT-Q2:  What is the deadline for a third-party servicer to submit its annual compliance audit?**

**ADT-Q3:  What is the deadline for a third-party servicer that has not submitted its annual compliance audit(s) for one or more years due to an**

incorrect assessment of whether the entity meets the regulatory definition of a third-party servicer and/or based on the omission of specific audit procedures in the OIG Audit Guide?

**ADT-Q4:  Who should a servicer or auditor contact if it has questions regarding institution or servicer audit requirements?**

## CATEGORY: THIRD-PARTY SERVICER DEFINITION & EXAMPLES

**D&E-Q1:  What is a third-party servicer?**

**D&E-A1:**  A third-party servicer is an entity or individual that administers any aspect of an institution's participation in the Title IV programs, including, but not limited to, services and functions necessary:

- For  the institution to remain eligible to participate in the Title IV programs,
- To determine a student's eligibility for Title IV funds,
- To account for Title IV funds,
- To deliver Title IV funds to students, or
- To perform any other aspect of the administration of the Title IV programs.

To protect the interest of institutions, taxpayers, and students, an institution may not contract with a third-party servicer to perform any aspect of the institution's participation in a Title IV program if the servicer (or its subcontractors) is located outside of the United States and/or is owned or operated by an individual who is

not a U.S. citizen or national, or a lawful U.S. permanent resident.  This prohibition applies to both foreign and domestic institutions.

**D&E-Q2:  What are some examples of functions or services performed by third-party servicers?**

**D&E-A2:**  The following table provides examples of different types of functions or services that institutions outsource to third-party providers and its characterization as a Title IV service or function subject to third-party servicer requirements.  This list is not exhaustive.

| Third-Party Servicer | Not a Third-Party Servicer |
|---|---|
| **In General** ||
| Activities, functions, or services performed on behalf of a Title IV eligible institution, from a remote location or on-site at an institution, that **ARE** considered an aspect of an institution's participation in a Title IV, HEA program and thus are subject to applicable third-party servicer requirements.<br><br>The institution and servicer are jointly and severally liable to the Department for any violation by a third-party servicer. | Activities, functions, services, or roles that **ARE** **NOT** considered an aspect of an institution's participation in any Title IV, HEA program and therefore are not subject to third-party servicer requirements.<br><br>The institution will be held solely responsible for any liability incurred as a result of software deficiencies, cybercrime, incorrect consulting advice, lost or damaged records, or servicer violations. |
| **Type of Employment** ||
| An external entity or individual providing financial aid staffing and/or Title IV processing support.<br><br>An external entity or individual providing financial aid management support, either interim or long-term, to direct, guide, provide leadership, or otherwise oversee the operations of the Title IV programs and/or financial aid staff, including development, implementation, and/or maintenance of the written policies and procedures for the Title | An employee of an institution, <u>if</u> the employee is paid directly by the institution; performs all duties under institution supervision; is not employed by or associated with a third-party servicer; is not a third-party servicer for any other institution; and does not perform Title IV functions or services on behalf of another institution.<br><br>Entities or individuals hired to review and/or revise an institution's policies and procedures to correct compliance deficiencies or to make recommendations for improvement. |

| | |
|---|---|
| IV services and functions performed on behalf of or in conjunction with the institution. | Entities or individuals hired to publish an institution's policies, procedures, handbooks, disclosures, etc. via print format, audio format, video format, and/or online. |
| An external entity or individual accessing Department systems (NSLDS, COD, CPS, etc.) that contain personally identifiable student information, and/or accessing personally identifiable student information downloaded from a Department system to perform any Title IV function or service on behalf of an eligible institution. | Entities or individuals hired to perform financial and compliance auditing, including preparation of financial statements.<br><br>Entities or individuals assisting an institution in completing and/or submitting its response to a program review, audit, or investigation.<br><br>Local or federal law enforcement agencies, fire departments, and/or other public safety agencies providing campus crime awareness and/or drug and alcohol prevention services. |
| **Student and Institutional Eligibility** | |
| Determining student eligibility and related activities, such as completing verification, performing satisfactory academic progress evaluations, determining award amounts, performing Return of Title IV aid calculations, and/or reconciling Title IV program accounts. | No exclusions. |
| Processing, certifying, originating, and/or approving Title IV award packages and/or disbursements, including requests for advanced or reimbursement funding. | |
| Preparing/submitting required applications or reports, such as an institution's Application for Approval to Participate in the Federal Student Financial Aid Programs (E-App), or its Fiscal Operations Report and Application for Participation (FISAP), Integrated Postsecondary Education Data System | |

| | |
|---|---|
| (IPEDS) reports, Campus Safety and Security data reports, and/or enrollment status and/or gainful employment reporting to the National Student Loan Data System (NSLDS). | |
| **General Financial Aid Counseling and Application-Related Activities** | |
| Processing student financial aid applications, including FAFSA or pre-FAFSA completion services. | Community awareness/public service FAFSA completion events and/or general financial aid presentations open to the public and not limited or restricted to attendance at a specific institution or institutions (i.e. College Goal Sunday). |
| Performing interactive financial aid counseling in person, over the phone, and/or by electronic means.  Includes operation of call centers to assist students through the financial aid processes necessary to award and disburse Title IV funds. | Publishing and/or mailing general student financial aid information, policies, procedures, or handbooks prepared by the institution via print format, audio format, video format, and/or online. |
| **Consumer Information Preparation** | |
| Preparing required consumer information disclosures, such as:<br>• A Security Report (including crime statistics, timely warnings and emergency notification, crime log, and emergency response and evacuation procedures)<br>• A biennial review of drug and alcohol abuse prevention programs<br>• Graduation and transfer rates<br>• Job placement rates, and/or gainful employment disclosures<br>• Entrance/Exit Loan counseling<br>• A preferred lender list | Campus crime awareness and/or drug and alcohol Prevention informational meetings, instructional curriculum or programming, and/or public awareness campaigns/events that are open to the public and not limited to or restricted to attendance at a specific institution or institutions.<br><br>This exclusion does not apply if an institution requires attendance at an event or completion of training to comply with any Title IV requirement (Campus Crime and Security Act, Violence Against Women Act, Drug and Alcohol policy requirements, etc.) |
| | Local or federal law enforcement agencies, fire departments, and/or other public safety agencies providing campus crime awareness and/or drug and alcohol prevention services. |

| | Publishing and/or distributing an institution's consumer information disclosures via print format, audio format, video format, and or/online. |
|---|---|
| **Default Aversion** | |
| Performing default prevention/aversion activities, such as contacting student loan borrowers to discuss repayment options or borrower account history, assisting with completion and/or collection of borrower deferment or forbearance forms, performing entrance/exit loan counseling, implementation and oversight of a written default management plan, and /or accessing borrower information contained in Department systems. | Financial literacy curriculum or programming, workshops, and/or public awareness campaigns/events open to Title IV and non-Title IV recipients.

This exclusion does not apply if an institution requires its students to attend a financial literacy event or complete financial literacy training or counseling to satisfy the institution's exit loan counseling or other Title IV requirements. |
| **Delivery of Title IV Funds** | |
| Cash management functions, including, but not limited to: collecting student credit balance disbursement preferences; providing terms and conditions and/or disclosure statements relative to the disbursement preference options available to a student or parent; collecting the financial account information necessary to initiate an electronic funds transfer (EFT) or ACH of Title IV funds to a financial account designated by the student or parent for the receipt of those funds; notifying students of the disbursement of Title IV funds and/or the delivery of credit balance refunds; receiving and processing of electronic files (disbursement file, payment instructions, fund wire) to print and mail credit balance refund checks and/or deliver Title IV credit balance refunds to students or parents via ACH, debit card, or other electronic means.  Also includes monitoring of undeliverable and/or un-negotiated checks or rejected ACH or EFT transactions. | Tier 2 arrangements as described in 34 CFR 668.164(f).

Direct ACH transactions between an institution's treasury account and an account designated by a student for receipt of Title IV funds.

Mailing of checks produced by the institution. |

| Providing Computer Services/Software and/or Maintenance of Records | |
|---|---|
| Collecting, reviewing, and/or maintaining supporting documentation necessary in person, by mail, or by electronic means to determine or support student eligibility determinations and/or to disburse or deliver Title IV funds to a student or borrower.  This includes information necessary to validate information reported on a student's FAFSA and/or to resolve conflicting information, as well as collecting student disbursement preference information for the delivery of Title IV credit balance refunds. | Warehousing of records.<br><br>Providing computer services or software, as long as the provider is not responsible for using the software for the institution's student aid purposes.<br><br>The exclusion for "providing computer services or software" does not apply if the provider performs any Title IV activity on behalf of the institution within the system through remote or automated processing and/or if the provider uses or has view or update access to any student-level information needed for the determination of Title IV eligibility maintained in the system (i.e. enrollment, registration, academic records, attendance, financial aid, etc.)<br><br>Similarly, the exclusion for the "warehousing of records" is restricted to the storage of Title IV-related records and does not apply if the entity performs any Title IV activity on behalf of the institution within the data storage or hosted environment, such as remote or automated processing, and/or the entity has view or update access to any student level information (i.e. enrollment, registration, academic, attendance, financial aid, etc.) within the hosted environment. |
| Other | |
| Perkins loan servicing or collection. | None |

**D&E-Q3:  How does the Department determine whether or not an entity or individual that is performing work on behalf of an institution is a third-party servicer?**

**D&E-A3:**  In making a determination as to whether or not an entity or individual is considered a third-party servicer, the Department looks at each case individually and focuses on the specific service(s) or function(s) being performed at that institution, as opposed to a title that the entity may be using or a generic description of the types of services provided.  Servicers often offer multiple versions of a product or service and frequently customize a product or service based on an institution's unique needs.  It is possible for an entity to be considered a third-party servicer at one institution and not at another depending on the specific services or functions that the entity performs at each institution.

For example, one institution may hire an entity or individual to perform a Title IV function, such as disbursing Title IV funds or delivering Title IV credit balances, making the entity or individual a third-party servicer for that institution.  Another institution may hire the same entity or individual to perform a non-Title IV function, such as marketing the institution's academic programs, which does not make that entity or individual a third-party servicer for the second institution.

Regardless of whether an individual or entity meets the definition of a Title IV third-party servicer, the institution must ensure that its contracts contain procedures governing the use and maintenance of any education records shared with the individual or entity, including specific procedures for governing the use and re-disclosure of personally identifiable information (PII) from education records.  The institution must be able to access all records needed to comply with applicable record retention requirements.  If the third-party servicer or the institution terminates a contract, the institution must be able to take possession of all records in the servicer's possession pertaining to the institution's participation in the Title IV programs.

**D&E-Q4:  If an institution does not compensate or reimburse an entity or individual for the Title IV functions or services that are performed on behalf of the institution, is the entity or individual still considered a third-party servicer?**

**D&E-A4:**  Yes.  A third-party servicer is an entity or individual that administers any aspect of an institution's participation in the Title IV programs on behalf of an eligible institution, regardless of remuneration.

**D&E-Q5:  If a State agency performs Title IV functions or services on behalf of an eligible institution, is the State agency considered a third-party servicer?**

**D&E-A5:**  Yes.  If a State agency performs Title IV functions or services on behalf of an eligible institution, the State agency is considered a third-party servicer and subject to the applicable third-party servicer regulations.

**D&E-Q6:  Does the Department approve third-party servicers or recommend third-party servicers to perform Title IV functions on behalf of institutions?**

**D&E-A6:**  While the Department has oversight authority over third-party servicers that perform Title IV functions on behalf of an institution, the Department does NOT list, endorse, or approve third-party servicers.

An institution must exercise caution in selecting third-party servicers, financial aid consulting services, financial aid management systems (software), and/or the electronic data storage systems it utilizes to assist in the administration of the Title IV programs.  Regardless of whether an entity is considered a third-party servicer for Title IV purposes, the institution has a fiduciary responsibility to ensure the policies, procedures, products, and systems that the servicer utilizes are compliant with applicable laws and regulations.  This includes the requirement that an institution be able to access all records (paper or electronic) created or maintained by a third-party servicer and make those records readily available to the Department for review.  The institution must also implement appropriate safeguards to protect student records and ensure any information shared from education records is only used for the purpose(s) for which the information was disclosed.  The institution will be held responsible for any liability incurred as a result of software deficiencies, incorrect consulting advice, lost or damaged records, and/or third-party servicer violations.

**D&E-Q7:  Are third-party servicers subject to the ban on incentive compensation?**

**D&E-A7:**  Yes.  Third-party servicers are subject to the same incentive compensation prohibitions as institutions.  Neither persons nor entities may receive direct or indirect payments of incentive compensation for securing enrollment (recruitment) or securing financial aid for students.

**D&E-Q8:  If an institution hires an individual from a temporary staffing agency to perform Title IV functions, is the staffing agency considered a third-party servicer?**

**D&E-A8:**  Temporary staffing agencies that do not specialize in, or have a significant presence in, staffing of higher education or in the administration of the Title IV student assistance programs are not considered third-party servicers.  As a result, the institution is solely responsible for any liabilities that may result from errors or compliance violations caused by the use of temporary staff provided by this type of agency.

Entities that specialize in, or have a significant presence in, higher education and/or the administration of Title IV student assistance programs that provide staffing, even on a temporary basis, to support an institution's administration of the Title IV student aid programs are considered third-party servicers and both the institution and the third-party are subject to all applicable third-party servicer requirements.  The institution and the third-party servicer are jointly and severally liable to the Department for any errors or compliance violations made by the staff provided by the servicer.

**D&E-Q9:  If an institution contracts with an outside entity to print and/or mail Title IV credit balance checks or to prepare electronic funds transactions (EFT) of Title IV credit balances, is the entity considered to be a third-party servicer?**

**D&E-A9:**  If an institution contracts with an entity to print and/or mail Title IV credit balance checks or to prepare EFTs of Title IV credit balances and those checks or EFTs draw funds directly from the institution's treasury account (the institution's operating account) or federal funds bank account (an account utilized to receive Title IV funds directly from the Department via G5), the check preparation or EFT entity is not considered a third-party servicer.  In these arrangements, the institution is responsible for reconciling its accounts, monitoring undeliverable or un-negotiated checks and returning funds to the Department within the required regulatory timeframes.  The institution is solely responsible for any liabilities that may exist as a result of errors or compliance violations that may occur because of the use of the third-party to perform these Title IV credit balance tasks.

If, on the other hand, an institution establishes an account at the third-party entity or transfers funds to an account with the third-party entity, or to any of the entity's affiliated partners, for purposes of writing Title IV credit balance checks out of such an account or creating EFT transactions out of such an account, the third-party entity is considered to be a third-party servicer and both the institution and the third-party are subject to all applicable third-party servicer requirements.  The institution and the third-party servicer are jointly and severally liable to the Department for any errors or compliance violations made by the third-party servicer.

**D&E-Q10:  If an institution contracts with an outside entity to perform functions necessary for the institution to calculate and/or disclose an institution's job placement rate, is the outside entity considered a third-party servicer?**

**D&E-A10:**  If an entity or individual is performing the functions necessary to calculate an institution's placement rates (contacting and/or obtaining employment information from graduates or a graduate's employer to confirm a student's employment in the recognized occupation for which the student was trained), and the institution uses or relies on this information to prepare required disclosures, the entity or individual is considered a third-party servicer.  If an entity or individual is

only auditing or validating the information the school utilized to calculate its placement rates, the entity or individual is not considered a third-party servicer.

**D&E-Q11:  If an institution performs Title IV functions or services on behalf of another institution (i.e. performs verification of student files; COD reporting; drawdown of funds; reconciliation of Title IV programs), is the institution considered a third-party servicer?**

**D&E-A11:**  It depends.  If an eligible institution performs Title IV functions or services on behalf of another institution that has the same legal corporate or shared governance system (e.g. a public institution performing functions on behalf of another institution within the same legally established State educational system or a proprietary institution performing functions on behalf of another institution within the same corporate ownership) the institution would <u>not</u> be considered a third-party servicer.

If an eligible institution performs Title IV functions or services on behalf of another institution that is not part of the same legal corporate or shared governance system the institution <u>is</u> considered a third-party servicer and subject to the applicable third-party servicer regulations.

## CATEGORY:  THIRD-PARTY SERVICER CONTRACTS

**CNT-Q1:  Is an institution required to enter into a written contract with a third-party servicer?**

**CNT-A1:**  Yes.  An institution must enter into a contract with a third-party servicer that clearly and thoroughly describes the services and functions the servicer is responsible for providing or performing on behalf of the institution.

**CNT-Q2:  Are institutions required to notify the Department when it enters into a contract with a third-party servicer?**

**CNT-A2:**  Yes, institutions are required to notify the Department within 10 days of the date it enters into, modifies, or terminates a contract with a servicer to administer any aspect of its participation in the Title IV programs.

The institution's notification must include the name and address of the servicer as well as a description of the functions or services that the servicer is performing on behalf of the institution.  Institutions report third-party servicer notifications via the Application for Approval to Participate in the Federal Student Financial Aid Programs (E-App) website at http://www.eligcert.ed.gov.

The institution must provide a copy of its third-party servicer contract (and any modifications) to the Department, if requested.

**CNT-Q3:  What must be included in a third-party servicer contract?**

**CNT-A3:**  Institutions must ensure that their third-party servicer contracts contain language that requires the servicer to agree to:

- Be jointly and severally liable with the institution for any violation of Title IV requirements resulting from the functions performed by the servicer;
- Comply with all applicable statutory, regulatory, and other Title IV requirements;
- Refer any suspicion of fraudulent or criminal conduct in relation to the institution's Title IV program administration to the Department's Office of the Inspector General;
- Confirm student eligibility and return Title IV funds (if required) when a student withdraws if the servicer disburses funds; and
- Return all records related to the servicer's administration of the institution's participation in the Title IV programs to the institution, and if the servicer disburses or releases Title IV funds, return all unexpended Title IV funds to the institution, if the contract with an institution is terminated, or the servicer ceases to perform any functions prescribed under the contract.

Institutions must ensure that its contracts accurately and specifically detail the functions that the servicer (or its subcontractor(s), if applicable) performs on behalf

of the institution, and those functions that are required to be completed by the institution.  The contract must identify the third-party servicer by its legal name and include any other name the servicer does business as (d/b/a).  The contract must provide the physical address and primary phone number of the servicer's primary location, as well as the name, title, phone number, and e-mail address of the president or chief executive officer of the entity.  If a third-party servicer subcontracts any of its contractual responsibilities, the contract must identify the subcontractor and clearly describe the functions performed on behalf of the servicer and institution by the subcontractor.

In addition, institutions are subject to the information security requirements established by the Federal Trade Commission (FTC) for financial institutions. Institutions must take reasonable steps to select and retain service providers that are capable of maintaining appropriate safeguards to protect customer information and require service providers <u>by contract</u> to implement and maintain such safeguards.

Finally, the institution must require the third-party servicer to agree to comply with all aspects of the Family Educational Rights and Privacy Act (FERPA) with regard to the third-party servicer's receipt and use of any education records provided by the institution.

Institutions are strongly encouraged to include provisions in its contract with a third-party servicer to terminate the contract immediately, without penalty, if the institution is notified that the Department has imposed an emergency, limitation, suspension, or termination action with regard to a servicer's ability to contract with the institution to administer any aspect of its participation in the Title IV, HEA programs or the servicer has been debarred, suspended, or voluntarily excluded government-wide from participation in covered transactions.

**CNT-Q4:  Are there any restrictions or prohibitions that prevent an institution from contracting with an individual or entity to perform Title IV functions on its behalf?**

**CNT-A4:**  Yes.  An institution may not contract with or otherwise engage a third-party servicer that:

- Has been limited, suspended, or terminated by the Department within the preceding five years;
- Has had, during the servicer's two most recent audits, a finding that resulted in the servicer being required to repay an amount greater than five percent of the funds that the servicer administered under the Title IV programs for any year; or
- Has been cited during the preceding five years for failure to submit audit reports required under Title IV in a timely fashion.

As mentioned previously, an institution may not contract with a third-party servicer to perform any aspect of the institution's participation in a Title IV program if the servicer is located outside of the United States and/or owned or operated by an individual that is not a U.S. citizen or national, or a lawful U.S. permanent resident.

**CNT-Q5:  How can an institution determine if a third-party servicer or its principals have been debarred, suspended, or voluntarily excluded government-wide from participation in covered transactions?**

**CNT-A5:**  Institutions must search the General Services Administration's System for Award Management site at http://www.sam.gov when it enters into, renews, or revises a contract with a servicer to determine if the servicer is an excluded entity. The institution should keep a copy of the search results in its records.

**CNT-Q6:  How can an institution determine if the Department has imposed an emergency limitation, suspension, or termination action with regard to a servicer's ability to contract with the institution to administer any aspect of its participation in the Title IV, HEA programs, pursuant to the provisions of 34 CFR Part 668, Subpart G?**

**CNT-A6:**  The Department will notify an institution in writing if the institution reports a servicer that has been limited, suspended, or terminated by the

Department, or if the Department has imposed an emergency action on the servicer.

**CNT-Q7:  Does an institution need to require a third-party servicer to sign a Certification By Lower Tier Contractor form?**

**CNT-A7:**  An institution is required to obtain a signed Certification By Lower Tier Contractor form from all of its third-party servicers, as well as any subcontractors that perform work for the institution on behalf of a third-party servicer.  The Certification By Lower Tier Contractor form is included as an attachment to the institution's PPA.  The school must make copies of the form and obtain the signatures of any and all Lower Tier Contractors on copies of the certification. The signed certification(s) are to be retained in the school's files.  A Lower Tier Contractor includes any contracted individuals not considered employees of the school, who participate in the school's administration of the Title IV programs.

**CNT-Q8:  What does jointly and severally liable mean?**

**CNT-A8:**  Under joint and several liabilities, the Department may seek repayment for Title IV violations from the institution, the third-party servicer, or both.

Since the institution is jointly and severally liable for any violation committed by its third-party servicer(s), the institution should take precautions during its selection and contracting process; and implement procedures with appropriate controls to periodically assess that the functions or services performed on behalf of the institution are compliant with Title IV rules.

**CATEGORY:  THIRD-PARTY SERVICERS – SAFEGUARDING STUDENT INFORMATION**
**SSI-Q1:  Does FERPA permit an institution to share personally identifiable information (PII) from students' education records with a third-party servicer without the student's consent?**

**SSI-A1:**  Yes, under certain conditions.  The Family Educational Rights and Privacy Act (FERPA) (34 CFR § 99.31(a)(4)) permits institutions to disclose PII from an education record of a student to a third-party servicer, without consent, in

connection with financial aid for which the student has applied or which the student has received, if disclosure of the information is necessary for such purposes as to:

      a.  Determine eligibility for the aid;
      b.  Determine the amount of the aid;
      c.  Determine the conditions for the aid; or
      d.  Enforce the terms and conditions of the aid.

Institutions must comply with FERPA's recordkeeping requirements for disclosures (34 CFR § 99.32).  These requirements state that an educational agency or institution:  (1) shall maintain a record of each request for access to and each disclosure of PII from the education records of each student; and (2) shall maintain the record with the education records of the student as long as the records are maintained.  Thus, if an institution discloses education records to a third-party servicer under this exception, it must be compliant with the recordation requirements under FERPA and, for each request or disclosure, the record maintained by the institution must:  (1) include the parties who have requested or received PII from the education records, and (2) the legitimate interests the parties had in requesting or obtaining the information.  If the institution discloses PII from education records with the understanding that further disclosures will be made, the educational institution's record of disclosure must include the names and legitimate interests of the additional parties.

**SSI-Q2  Are there any limitations or restrictions on the type of PII from education records that an institution can provide, without a student's prior written consent, to its third-party servicer?**

**SSI-A2:**  Yes.  The PII from education records provided to a third-party servicer is limited to the PII that is necessary for the third-party servicer to perform the Title IV function(s) or service(s) the third-party servicer has contracted to perform on behalf of the institution.

Institutions must ensure that its third-party servicers use PII only for the purpose(s) for which the PII was disclosed.  For a third-party servicer, that purpose is the Title

IV function the servicer contracted to perform on behalf of the institution. Servicers are <u>prohibited</u> from using PII for any other purpose.

The Department will initiate an administrative action against the institution and/or its third-party servicer if a servicer violates this prohibition.

**SSI-Q3:  Are there any limitations or restrictions on granting a third-party servicer access to Department systems?**

**SSI-A3:**  Yes.  For both institutions and third-party servicers, access to information in Department systems may only be used for the Title IV function or service that is being performed.  The data contained in Department systems such as the National Student Loan Data System (NSLDS), the Common Origination and Disbursement (COD) System, or the Central Processing System (CPS) are confidential and are protected by the Privacy Act of 1974, as amended, and other applicable statues and regulations.

Failure to comply with Department access and user requirements may result in the organization or individual losing access to Department systems and/or being subject to sanctions, including, but not limited to, the initiation of a limitation, suspension, or termination action or a debarment proceeding against the individual, the institution, and/or third-party servicer.  Each user of a Department system must use his or her own User-ID.  That person is responsible for safeguarding the User-ID and password and must not allow any other person to use them.  Further, sharing or providing data retrieved by an authorized person from Department systems with persons or organizations that are not expressly authorized to receive that information is prohibited.

An eligible institution or third-party servicer that allows unauthorized access to Department systems will be considered to have violated its responsibilities and places itself at risk of losing access to Department systems and data, and to possible loss of eligibility to participate in the Title IV aid programs.

**CATEGORY:  THIRD-PARTY SERVICER DATA FORM**

**DF-Q1:  What is a Third-Party Servicer Data form and who is required to complete the form?**

**DF-A1:**  The Third-Party Servicer Data form is an OMB-approved data collection tool utilized to obtain information needed to validate third-party servicer information reported to the Department by institutions, as well as to collect additional information from third-party servicers needed for effective oversight.

Entities or individuals that meet the definition of a third-party servicer are required to submit the Third-Party Servicer Data Form to the Department.  Third-party servicers are required to update information provided on the Third-Party Servicer Data form within 10 days of the date that:

- The servicer changes its name;
- The servicer changes the address or contact information for its primary location or additional location;
- The servicer adds or terminates a contract with an eligible Title IV institution; or
- The servicer buys, sells, or merges with another third-party servicer.

**DF-Q2:  Where can a third-party servicer obtain a copy of the Third-party Servicer Data Form and how is the form submitted to the Department?**

**DF-A2:**  Third-Party Servicer Data forms can be downloaded from this site. Completed forms should be submitted electronically to:

> fsapc3rdpartyserviceroversight@ed.gov

or mailed to:

> Third-Party Servicer Oversight Group – Data Form
> Federal Student Aid
> United States Department of Education
> 1010 Walnut Street Suite 336
> Kansas City, MO  64106-2147

CATEGORY:  THIRD-PARTY SERVICER AUDITS

**ADT-Q1:  Are third-party servicers required to submit an annual compliance audit?**

**ADT-A1:**  Yes.  A third-party servicer that performs any aspect of an institution's administration of the Title IV programs must have an independent auditor conduct a compliance audit of its administration of the functions or services that it performs on behalf of eligible institutions, unless (1) the servicer contracts with only one participating institution, and (2) the attestation engagement of that institution's participation involves every aspect of the servicer's administration of the Title IV programs.  A third-party servicer must follow the procedures contained in the audit guides (http://www2.ed.gov/about/offices/list/oig/nonfed/sfa.html) developed by and available from the Department of Education's Office of the Inspector General (OIG), provided that the Federal student aid functions performed by the entity are covered in the submission.

Third-party servicer audits must be submitted to:

> Third-Party Servicer Oversight Group – Audits
> U. S. Department of Education - FSA
> 1010 Walnut Street Suite 336
> Kansas City, MO  64106-2147

Or as an encrypted e-mail attachment submitted to:

> fsapc3rdpartyserviceroversight@ed.gov

In cases where the Title IV services or functions performed by a third-party servicer are not covered in the OIG's audit guide, the third-party servicer must submit a letter to the Third-Party Servicer Oversight Group that asserts that the entity is (or was) an eligible third-party servicer (as outlined in 34 CFR § 668 subpart G) regardless of whether the third-party servicer submits an audit for services or functions performed that are covered in the OIG's audit guide.  The letter must provide management's assertion that it complied with all applicable

requirements in regards to the services and functions that it performed on behalf of eligible institutions.

In addition, the letter must include the following:

1. Legal Name and d/b/a name of the Servicer
   Servicer Address
   Telephone Number
   Fax Number
   Web-site URL

   President/CEO Name
   Telephone Number
   E-mail Address

   Other Contact Person, Title
   Telephone Number
   E-mail Address

2. A detailed description of the functions and services the servicer performs on behalf of the institutions it contracted with.  For example,

   • Deliver Title IV credit balance refund activities such as collecting student disbursement preferences, assisting with the establishment of accounts for the receipt of Title IV credit balance refunds, receiving Title IV funds and payment rosters necessary to deliver Title IV credit balance refunds to students via cash, check, ACH, debit card, or other electronic means, etc.; or,
   • Perform Default Management/Aversion activities such as obtaining student borrower information contained in Department systems, contacting borrowers regarding loan indebtedness, repayment options or loan obligations, assisting with completion and/or collection of deferments, forbearances, and/or other loan documents, etc.

3. A listing of the Title IV institutions the servicer performed work on behalf of, during the servicer's most recently ended fiscal year.  This list must include each institution's name and OPE ID.

4. Assertions that:
   a. The servicer's contract includes all items cited in 34 CFR § 668.25(c);
   b. The servicer has established a system of internal controls to assure compliance with those services or functions for which it provides,
   c. The servicer maintains comprehensive written procedures describing the functions or services it performs on behalf of institutions.  These procedures must clearly outline the servicer's responsibilities versus the institutions' responsibilities.
   d. The servicer complies with all requirements of the Family Educational Rights and Privacy Act (FERPA), as well as the information security requirements established by the Federal Trade Commission (FTC) for maintaining appropriate safeguards in respect to the education records and student information it has access to.
   e. The servicer is adhering to all Department requirements for accessing and/or granting access to Department systems.

The third-party servicer must submit its audit supplement letter to the:

> Third-Party Servicer Oversight Group – Audits
> U. S. Department of Education - FSA
> 1010 Walnut Street Suite 336
> Kansas City, MO  64106-2147

> Or as an encrypted e-mail attachment to:

> fsapc3rdpartyserviceroversight@ed.gov

**ADT-Q2:  What is the deadline for a third-party servicer to submit its annual compliance audit?**

**ADT-A2**:  A third-party servicer must submit its compliance audit or audit letter annually no later than six months after the last day of the servicer's fiscal year.

**ADT-Q3:  What is the deadline for a third-party servicer that has not submitted its annual compliance audit(s) for one or more years due to an incorrect assessment of whether the entity meets the regulatory definition of a third-party servicer and/or based on the omission of specific audit procedures in the OIG Audit Guide?**

**ADT –A3:**  For third-party servicers that provide services or functions that are included in the Department of Education's Office of the Inspector General's (OIG's) current audit guide, the third-party servicer must submit its missing compliance audit(s) no later than December 31, 2016.  The audit(s) submitted must include all unaudited periods for the three most recently completed fiscal years (except for close-out audits).  Subsequent audits must be submitted annually no later than six months after the last day of the servicer's fiscal year.

Third-party servicers that provide services or functions that are not included in the OIG's audit guide must submit an audit letter containing all of the items outlined in ADT–A1 above, no later than six months after the last day of the servicer's fiscal year, that begins on or after December 31, 2016.

For example, if a third-party servicer's fiscal year end is December 31, 2016, its audit letter must be submitted on or before June 30, 2018.  Subsequent audit submissions must be submitted no later than six months after the last day of the servicer's fiscal year end.

**ADT-Q4:  Who should a servicer or auditor contact if it has questions regarding institution or servicer audit requirements?**

**ADT-A4:**  Audit questions should be submitted to the Department of Education's Office of the Inspector General's (OIG's) Non-Federal Audit Team by e-mail at oignon-federalaudit@ed.gov.

# **EXHIBIT C**



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF POSTSECONDARY EDUCATION

THE ASSISTANT SECRETARY

**JAN 0 9 2015**

GEN-15-01

Subject: Third-Party Servicer Institutional Requirements and Responsibilities

Summary: This letter provides guidance to institutions that contract with third-party servicers to administer any aspect of the institution's participation in the student assistance programs authorized under Title IV of the Higher Education Act of 1965, as amended (HEA).  For more information, see 34 C.F.R. § 668.2 (definition of third-party servicer); 34 C.F.R. §§ 668.23, 668.25; Dear Colleague Letter GEN 12-08.

Dear Colleague:

We have determined that a significant number of institutions have failed to report, update, and/or have reported incorrect third-party servicer information on the institution's Application for Approval to Participate in the Federal Student Financial Aid Programs (E-App), under the regulations at 34 C.F.R. § 668.25.  We are aware that some servicers have told institutions not to report them as third-party servicers, creating confusion regarding what entities should be reported as third-party servicers.  We have developed this guidance to provide clarity on the third-party servicer requirements of the regulations.

**What are the activities performed by a third party that determines if that entity is a third-party servicer under the regulations?**

Under the regulations at 34 C.F.R. § 668.2, a third-party servicer is any individual or entity that contracts with or performs work on behalf of an institution to administer, through manual or automated processing, any aspect of an institution's responsibilities under the Title IV, HEA programs.  As provided in the regulations, an institution's Title IV responsibilities include, but are not restricted to, performing one or more of the following:

- Processing of student financial aid applications, including Free Application for Federal Student Aid (FAFSA) or pre-FAFSA completion services performed on behalf of an eligible institution;

- Collecting, reviewing, and/or maintaining supporting documentation required to process Title IV funds;

- Awarding, certifying, originating, and/or disbursing Title IV funds;

- Delivering Title IV credit balance refunds to students or parents (via cash, check, Automated Clearing House (ACH), debit card, or other means);

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

- Providing financial aid counseling, including assistance to students or parents in person, over the phone, or by any electronic means, including operation of call centers;

- Performing default prevention/management functions for Direct Loan, Federal Family Education Loan, and/or Perkins Loan programs, including cohort default analysis, enhanced loan counseling, delinquency assistance, development/implementation of a default management plan, and/or other default prevention outreach activities;

- Providing entrance and exit loan counseling, including in person, by mail, or electronically;

- Performing Federal Perkins Loan servicing or collections;

- Financial aid consulting, including financial aid staffing, interim management, processing support, and/or development and maintenance of written policies and procedures;

- Preparing and/or submitting required reports including enrollment reporting to the National Student Loan Data System, the Integrated Postsecondary Education Data System, Campus Crime and Security, and the Fiscal Operations Report and Application to Participate reporting; and

- Preparing or disseminating required consumer information disclosures, including general, campus crime, drug and alcohol prevention, graduation rates, placement rates, and gainful employment disclosures.

As provided in the regulations, performance of one or more of the following does NOT create a regulatory third-party servicer relationship:

- Publishing, providing, and administering ability-to-benefit tests;

- Financial and compliance auditing, including preparation of financial statements;

- Mailing of documents prepared by the institution;

- Warehousing of records; and

- Providing computer services or software as long as the provider is not responsible for using the software for the institution's student aid purposes.

The exclusion for "providing computer services or software" is limited to computer products and/or services that reside at and are under the control of the institution. The exclusion does not apply if the provider performs any Title IV activity and/or maintains any student level information. Similarly, the exclusion for the "warehousing of records" is restricted to the physical storage of Title IV related records. Entities that host secure portals or similar technologies for the transmission and/or electronic storage of and access to Title IV-related

- Return to the institution all records and Title IV funds in the servicer's possession pertaining to the institution's participation in the program or programs if the servicer or institution terminates the contract, if the servicer stops providing services for the administration of a Title IV program, or the servicer files a petition under the Bankruptcy code (34 C.F.R. § 668.25(c)(5).

In addition, the contract must identify the third-party servicer by its legal name and by any other name the servicer does business as (d/b/a). The contract must provide the physical address and primary phone number of the servicer's primary location, as well as the name, title, phone number, and e-mail address of the president or chief executive officer of the entity. The contract must clearly describe the specific Title IV functions that the third-party servicer will perform for the institution. If a third-party servicer subcontracts any of its contractual responsibilities, the contract must identify the subcontractor and clearly describe the functions performed on behalf of the servicer and school by the subcontractor.

## FERPA Requirements

In certain circumstances a third-party servicer may be considered a school official for the purposes of the Federal Family Educational Rights and Privacy Act (FERPA) and, in those circumstances, is permitted to receive and use personally identifiable information (PII) from education records without the student's consent to the same extent as is permitted for a school official or employee. If a servicer is using the PII to set up a bank account for the student or to maintain a credit balance for the student, it must obtain prior written consent of the student. See 34 C.F.R. §§ 668.164(c)(3)(i), 668.165(b)(1)(ii).

FERPA regulations describe the conditions that must be met for a contractor or other party to whom an institution has outsourced institutional services or functions to be considered a school official under FERPA. Specifically, the contractor or the other outside party must:

- Perform an institutional service or function for which the school would otherwise use employees;

- Be under the control of the school with respect to the use and maintenance of education records; and

- Comply with the FERPA requirements governing the use and redisclosure of PII from education records. 34 C.F.R. § 99.31(a)(1)(i)(B).

A school official may disclose PII from education records to a third-party servicer that meets the above criteria without the student's consent, but only if the school official determines that the third-party servicer has "legitimate educational interests." 34 C.F.R. § 99.3(a)(1)(i)(A). Each postsecondary institution is required to include the criteria for who is considered a "school official" and what is considered a "legitimate educational interest" in its annual notification of rights under FERPA. 34 C.F.R. § 99.7(a)(3)(iii).

Contractors to whom institutions disclose PII from students' education records may use that PII only for the purpose(s) for which they are disclosed. 34 C.F.R. § 99.33(a)(2). For a third-party servicer, that purpose is the Title IV function the servicer has contracted to perform on behalf of the institution.

## Security Information Program Requirements

Postsecondary educational institutions participating in the Title IV, HEA programs are subject to the information security requirements established by the Federal Trade Commission (FTC) for financial institutions. These FTC requirements also apply to Title IV third-party servicers. The requirements apply to all customer information in an institution's possession, regardless of whether such information pertains to students, parents, or other individuals with whom the institution has a customer relationship, or pertains to the customers of other financial institutions that have provided such information to the institution. Customer information is any record containing nonpublic personal information about a customer of a financial institution, whether in paper, electronic, or other form, that is handled or maintained by or on behalf of the institution or its affiliates. As a financial institution covered under these information security requirements, an institution must develop, implement, and maintain a comprehensive information security program.

The information security program must be written in one or more readily accessible parts and contain administrative, technical, and physical safeguards that are appropriate to the size and complexity of the school, the nature and scope of its activities, and the sensitivity of any customer information at issue. Under these provisions, a service provider is any person or entity that receives, maintains, processes, or otherwise is permitted access to customer information through its provision of services directly with an institution. Institutions must take reasonable steps to select and retain service providers that are capable of maintaining appropriate safeguards for the customer information at issue and require service providers by contract to implement and maintain such safeguards.

See 15 U.S.C. §§ 6801(b), 6805(b)(2); 16 C.F.R. §§ 313.3(n), 314.1–5; Gramm Leach Bliley Act, Pub. L. No.106-102

## Third-Party Servicer Compliance Audits

In general, under the regulations at 34 C.F.R. § 668.23(c), a third-party servicer must submit annually to the Secretary its compliance audit no later than six months after the last day of the servicer's fiscal year. The Department is aware that some third-party servicers have not filed annual compliance audits due to an incorrect assessment of whether the entity meets the regulatory definition of a third-party servicer and/or based on the omission of specific audit procedures in the OIG Audit Guide for some services or functions performed on behalf of an institution. Third-party servicers that are subject to the audit requirements outlined in 34 C.F.R. § 668.23(c) that did not submit a required audit(s) for one or more years must:

- Submit a compliance audit no later than one fiscal year subsequent to the date of this letter; and

Page 6

- Submit a letter to the Department within 60 days of the date of this letter describing the Title IV-related functions the entity performs on behalf of higher education institutions along with an explanation of the reason(s) the servicer did not submit its required compliance audits.

Additional guidance concerning audit requirements will be forthcoming.  Letters should be submitted to:

Ralph A. LoBosco, Director
Federal Student Aid
Third-Party Servicer Oversight Group
United States Department of Education
1010 Walnut Street, Suite 336
Kansas City, MO  64106-2147

If you have any questions about the information contained in this Dear Colleague Letter, please contact the Third-Party Servicer Oversight Group by e-mail at FSAPC3rdpartyserviceroversight@ed.gov or by telephone at (816) 268-0543.

Sincerely,

Lynn B. Mahaffie
Acting Assistant Secretary
Office of Postsecondary Education

# **EXHIBIT D**



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE OF POSTSECONDARY EDUCATION

THE ASSISTANT SECRETARY

April 26, 2012

GEN-12-08

Subject:  Disbursing or Delivering Title IV Funds Through a Contractor

Summary:  This letter provides general guidance to institutions that contract with third-party
servicers to administer any aspect of their participation in the title IV, Higher Education Act
(HEA) programs.  The letter provides specific guidance to institutions that use contractors to
deliver title IV credit balances to their students directly or through a contractor-supplied financial
institution such as a bank or a credit union.

Dear Colleague:

This letter reminds institutions of their responsibilities under Department of Education
(Department) regulations when they enter into contracts with servicers to administer any aspect
of the institution's participation in the title IV, HEA programs.  The Department's rules
governing an institution's use of third-party servicers (servicers) are in 34 CFR 668.25.  The
following questions and answers (Qs & As) are intended to provide guidance to institutions that
use, or intend to use, a third-party-servicer to carry out title IV programmatic requirements and
activities, particularly activities related to delivering title IV credit balances to students directly
or through a contractor-supplied financial institution such as a bank or a credit union.  The
information provided below is general in nature.  Institutions and servicers must comply with the
specific statutory and regulatory provisions applicable to third-party agreements.

GENERAL

Q1.    What is the regulatory definition of a third-party servicer?

A1.    With regard to institutions, the term "third-party servicer" is defined in 34 CFR 668.2 as
"An individual [not including an employee of the institution] or a State, or a private, profit, or
non-profit organization that enters into a contract with an eligible institution to administer,
through either manual or automated processing, any aspect of the institution's participation in
any title IV, HEA program."

Q2.    What are examples of functions that can be performed by a third-party servicer on behalf
of an institution?

A2.    The regulatory definition lists some of the title IV functions that, if performed by a third-
party on behalf of an institution, demonstrate that the third-party is a third-party servicer and
trigger the requirements of 34 CFR 668.25.  The listing, which is non-exhaustive, includes the
following:

1990 K ST. N.W., WASHINGTON, DC 20006
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by
fostering educational excellence and ensuring equal access.*

A. Processing student financial aid applications;

B. Performing need analysis;

C. Determining student eligibility and related activities;

D. Certifying loan applications (this would also include originating Direct Loans);

E. Processing output documents for payments to students;

F. Receiving, disbursing, or delivering title IV, HEA program funds, excluding lock-box processing of loan payments and normal bank electronic fund transfers;

G. Conducting activities required by title IV, HEA consumer information service regulations;

H. Preparing and certifying requests for advance or reimbursement funding;

I. Loan servicing and collection;

J. Preparing and submitting institutional eligibility and participation notices and applications; and

K. Preparing a Fiscal Operations Report and Application for Participation (FISAP).

Q3.     Are there restrictions on the entities with whom an institution may enter into a third-party agreement?

A3.     The regulations at 34 CFR 668.25(a) provide that an institution may enter into a third-party servicer agreement with an entity only to the extent that the servicer's eligibility to contract with the institution has not been limited, suspended, or terminated under Subpart G of the Department's Student Assistance General Provisions regulations.

Additionally, under the regulations at 34 CFR 668.25(d), a third-party servicer may not be one that –

- Has been limited, suspended, or terminated by the Secretary within the preceding five years;

- Has had, during the servicer's two most recent audits, an audit finding that resulted in the servicer being required to repay an amount greater than five percent of the funds that the servicer administered under the title IV, HEA programs for any award year;

- Has been cited during the preceding five years for failure to submit audit reports required under title IV of the HEA in a timely fashion.

In addition, a former third-party servicer, once subjected to a termination action by the Secretary, may not enter into a written contract to administer any aspect of an institution's participation in any title IV, HEA program if financial guarantees and acknowledgements of joint and several liability required under 34 CFR 668.25(d)(2) have not been provided.

Q4.    What requirements apply to an institution that enters into a third-party agreement with an entity to perform a title IV, HEA function on the institution's behalf?

A4.    The institution and the servicer are jointly and severally liable for any violation by the servicer of any title IV, HEA provision.  34 CFR 668.25(d)(2)(ii).

In addition, the institution must provide to the Secretary a copy of any contract it has entered into with the servicer.

The institution must notify the Secretary within 10 days of the date that –

- The institution enters into a new third-party servicer contract or significantly modifies an existing contract;

- The institution or the servicer terminates a contract; or

- The servicer stops performing the functions required under the contract, goes out of business, or files a bankruptcy petition.

The notice must include the name and address of the servicer.

Q5.    Are there certain required conditions to which the servicer must agree in the contract with the institution?

A5.    The agreement must be in the form of a written contract that may or may not require compensation to the third-party servicer.  The contract between the institution and the third-party servicer must provide that the third-party servicer agrees to:

- Comply with all the title IV provisions (this includes those that refer solely to institutions as well as those that explicitly reference third-party servicers);

- Be jointly and severally liable with the institution for any violation by the third-party servicer of any title IV, HEA provision;

- Use any title IV funds (and any interest or earnings on them) solely for the purposes specified in and in accordance with the applicable program regulations;

- Refer any reasonable suspicion of fraudulent or criminal conduct in the title IV programs by the institution or by an applicant or student to the Department's Inspector General;

- Return to the institution all title IV, HEA program funds and records related to the servicer's administration in the title IV, HEA programs if the contract is terminated, if the servicer ceases to perform any functions prescribed under the contract, or if the servicer files for bankruptcy;

- Annually submit a compliance audit as provided at 34 CFR 668.23.  For a servicer that contracts with several participating institutions, a single compliance audit can be performed that covers its administrative services for all those institutions.  Additional information regarding these requirements can be found at the Department's Inspector General's Web site at:

http://www2.ed.gov/about/offices/list/oig/nonfed/sfa.html

TITLE IV DISBURSEMENTS AND CREDIT BALANCES

Q6.    If my institution has contracted with an entity to deliver title IV credit balances to students, is the entity a third-party servicer?

A6.    Yes, as discussed above in Q&A #1, a third-party servicer is an individual or organization that enters into a written contract with an institution to administer any aspect of the institution's participation in the title IV, HEA programs.  This includes disbursing title IV funds, including paying or otherwise delivering title IV credit balances to students or parents.

Q7.    If an institution has contracted with a third-party servicer to perform an institutional title IV, HEA program responsibility such as disbursing title IV credit balances, may the institution provide the third-party servicer with personally identifiable information (PII) from the education records of an eligible student without the consent of the eligible student—under Family Educational Rights and Privacy Act (FERPA) regulations, students who attend an institution of postsecondary education are eligible students who exercise their own rights under FERPA? Must the third-party servicer, like the institution, comply with the FERPA requirements?

A7.    Yes, in certain circumstances a third-party servicer may be considered a school official for the purposes of FERPA and, in those circumstances, is permitted to receive and use PII from education records without the eligible student's consent to the same extent as an actual school official – provided that the servicer is not using the PII to set up a bank account for the student or to maintain a credit balance for the student, either of which requires the institution to obtain prior written consent of the student under title IV regulations at 34 CFR 668.164(c)(3)(i) and 668.165(b)(1)(ii).

FERPA regulations at 34 CFR 99.31(a)(1)(i)(B) describe the conditions that must be met for a contractor or other party to whom an institution has outsourced institutional services or functions to be considered a school official under FERPA.  Specifically, the contractor or the other outside party must:

- Perform an institutional service or function for which the school would otherwise use employees;

- Be under the control of the school with respect to the use and maintenance of education records; and

- Comply with the FERPA requirements governing the use and redisclosure of PII from education records.

A school official may disclose PII from education records to a third-party servicer that meets the above criteria without the eligible student's consent, but only if the school official determines that the third-party servicer has "legitimate educational interests." 34 CFR 99.3(a)(1)(i)(A).

Each postsecondary institution is required to include the criteria for who is considered a "school official" and what is considered a "legitimate educational interest" in its annual notification of rights under FERPA, as required by 34 CFR 99.7(a)(3)(iii).  A model notification is found here:

http://www2.ed.gov/policy/gen/guid/fpco/ferpa/ps-officials.html

For more information, please see the discussion on page 74813 in the preamble of the 2008 FERPA regulations at http://edocket.access.gpo.gov/2008/pdf/E8-28864.pdf.

Q8.     Can a third-party servicer, without student consent, utilize the PII from education records provided to them by an institution for their proprietary use in a non-contracted enterprise such as additional financial products that they may offer?

A8.     No.  Under 34 CFR 99.33(a)(2), contractors to whom educational agencies and institutions disclose PII from students' education records may use that PII only for the purpose(s) for which they are disclosed.  For a third-party servicer, that purpose is the title IV function the servicer has contracted to perform on behalf of the institution.

Q9.     In some instances, institutions distribute a pre-loaded, yet-to-be activated debit card or similar product to their students, in anticipation that the students will opt to use it.  Is the preloading of PII from students' education records for this purpose a FERPA violation, particularly if the student does not opt to authorize the account and activate the preloaded card?

A9.     Yes.  If the debit card is associated with a bank account which the institution wants the student to open, under 34 CFR 668.164(c)(3), an institution must have an eligible student's written consent before opening a bank account for a student.  Disclosure of PII from education records to a contractor to provide students with bank accounts may only occur if the institution itself has been authorized to open such bank accounts for its students, thereby allowing the institution's contractor to perform an "institutional service or function for which the institution would otherwise use employees."  Because, without student consent to open up a bank account, a contractor cannot qualify as a school official under 34 CFR 99.31(a)(1)(i)(A) and (B), discussed above, and because none of the other conditions set forth in 34 CFR 99.31(a) for disclosure by an institution of PII from an education record without consent are met, disclosure of the PII by the institution to the contractor in the circumstances described would constitute a FERPA violation.

Q10.    May an institution, its third-party servicer, or the servicer's financial institution charge a fee for either opening an account or for receiving any type of debit card, stored value card, or another type of automated teller machine (ATM) card, or similar transaction device intended for delivering a title IV credit balance?

A10.    No.  Per 34 CFR 664.164(c)(3)(iv), regardless of how students receive their title IV credit balance funds, an institution, and any third-party servicer, is prohibited from charging a fee for delivering those title IV funds.  Another example of an unallowable fee is the charging of a "lack of documentation" fee levied due to a student's failure to provide documentation required by law to open a new account in a time frame to suit the contractor or their financial institution.

Q11.    What recourse does an institution have if a student neglects to comply with an institution's established policy that it will only make title IV credit balances available to a student either by electronic funds transfer to a student's bank or credit union account or otherwise restrict the issuance of the credit balance by transferring it to a debit card, stored value card, or other ATM card issued through a financial institution of the school's choosing?

A11.   If a student does not comply with the institution's established policy, the school is still obligated to provide a check or cash for the amount of the credit balance to the student within the 14-day time frame provided for under 34 CFR 668.164(e).

Q12.   If the institution offers a debit card, stored value card, or ATM card, or a similar transaction device through its servicer or its servicer's financial institution, when must the institution inform its students of the terms and conditions associated with the card?

A12.   Under 34 CFR 164(c)(3)(ii), the institution must inform the student before the account associated with the card is opened of the terms and conditions of the card or other instrument, including any fees and other costs associated with the account. This information should include whether all or some of the fees incurred per month by the student will be refunded back to the student's account.

Institutions also should mention whether cards issued through its contracted financial institution's ATM are part of a surcharge-free network, indicate the name of the network, and indicate the approximate number of available ATM's in that network both nationally and locally. Institutions should also disclose how many surcharge-free ATM's are on their campus, their location, the hours that they are accessible to patrons, and, if available, a hyperlink to an ATM locator for their affiliated networks.

We also encourage institutions to publically disclose a breakdown of the average annual costs incurred by their students based on the debit cards activated via the third-party servicer agreement that is refreshed on an annual basis.

Q13.   What are some proactive steps that an institution can take to control its costs in delivering a title IV credit balance to a student?

A13.   It may be advisable for the institution to encourage its incoming students to open an account at a financial institution of their own choosing before classes start, or require students to provide information to the institution about their existing bank account where the institution can make credit balance payments cheaply and expeditiously via electronic funds transfers to those accounts.

Q14.   Can a debit card provider participate with an institution by displaying each entity's logo on either the student's school identification card or single-use debit card?

A14.   Currently there are no title IV prohibitions disallowing the debit card provider and the institution from displaying their respective logos on either the student's identification card or debit card.

Q15.   Are there any current guidelines that institutions should follow in determining the number of their servicer's ATMs that are needed for a specific student population?

A15.   No. Although 34 CFR 668.164 (c (3)(v) provides that an institution must ensure that students have convenient access to ATMs or a branch office of the bank in which the account was opened, the Department has not provided specific guidelines for determining the minimum number of a servicer's ATMs that should be available to its student population. At the request of the Department, the institution must show how it determined the number of surcharge-free

ATMs that are located on the institution's campus, in institutionally owned or operated facilities, or, consistent with the meaning of the term "Public Property" as defined in 34 CFR 668.46(a), immediately adjacent to and accessible from the campus.

We note that the intent of the regulations is to ensure that students can make unlimited withdrawals from their on-campus ATMs without incurring a fee.

If you have any questions about the information contained in this DCL, please contact Anthony Gargano by e-mail at anthony.gargano@ed.gov or by telephone at 202-502-7519.

Sincerely,

Eduardo M. Ochoa